JoAnn DRENNAN; Rosemary Tate; James E. Lay; William Patterson; Lonnie Turner; Charles Green; Rondell Gilbert; William Kirby; and Daniel Ayres, **on their own behalf and on behalf of those similarly situated, Plaintiffs–Appellees, Cross–Appellants,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellant, Cross–Appellee.**

Nos. 90–3659, 90–3660.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 12, 1991.

Decided Oct. 13, 1992.

Rehearing and Rehearing En Banc Denied Jan. 5, 1993.

---

James M. Kelly (argued and briefed), Mark C. Patterson (briefed), Robbins, Kelly, Patterson & Tucker, Cincinnati, Ohio, for plaintiffs-appellees, cross-appellants.

John D. Luken, John M. Kunst (briefed), Dinsmore & Shohl, Cincinnati, Ohio, Francis S. Jaworski (argued and briefed), General Motors Corp., Detroit, Mich., for defendant-appellant, cross-appellee.

M. Jay Whitman, Leonard R. Page (briefed), Associate Gen. Counsel, International Union, UAW, Detroit, Mich., amicus curiae.

Before: KEITH and MARTIN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

The defendant-appellant, General Motors (GM), has appealed from the decision of the district court, issued following a bench trial, that found GM had breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001 *et seq.*, by misleading its laidoff employees by announcing that the Voluntary Termination of Employment Program (VTEP) benefit plan would not be available for their participation.

The plaintiff-appellees are 270 former employees of the Norwood, Ohio GM assembly plant with ten or more years of seniority (Class). GM closed the Norwood plant in August, 1987, and placed the Class Members on layoff status. On or about September 15, 1987, GM notified all laidoff employees of their right to participate in a benefit plan styled Supplemental Unemployment Plan Separation (SUB Buyout).

The SUB Buyout provided an employee with a lump sum payment in consideration for the employee's agreement to voluntarily forfeit his/her seniority status, employment status, and layoff status with GM. The Class ultimately accepted the SUB Buyout.

GM also had in effect during this period another benefit plan entitled Voluntary Separation of Employment Program (VTEP). Like the SUB Plan, VTEP was available to only those employees who agreed to terminate their employment with GM, forfeit seniority status, and relinquish all vested retirement benefits and post-retirement health care benefits. VTEP provided a substantially larger lump sum final payment than the SUB Buyout as consideration for an employee's participation. Under the existing bargaining agreement creating VTEP, GM was not required to offer participation in VTEP to laidoff Norwood employees, i.e., the Class.

After GM announced the layoff, but before the Class accepted the SUB Buyout, the Class members questioned plant management about their right to participate in VTEP. Although the Norwood plant management consistently denied that VTEP would become available to them, GM management was, in fact, privately considering the option of their participation in VTEP. Relying upon management's statements, the Class accepted the SUB Buyout. Shortly after they accepted the SUB Buyout, management announced the availability of the VTEP option to all GM employees with ten or more years of seniority. The Class, accordingly, was no longer eligible since its members had accepted the SUB Buyout and terminated employment with GM.

The Class initiated this action on June 7, 1988, and amended its complaint on July 20, 1988. It alleged that GM had misled its members into believing VTEP would never be available to them and had breached its fiduciary duties under ERISA, 29 U.S.C. section 1104. The district court certified the class on October 27, 1988, defining the class as "former GM Norwood Plant employees who had more than ten years of

GM employment prior to being placed on layoff status in August, 1987, and who terminated their relationship with GM subsequent to their layoff by accepting the Supplemental Unemployment Benefit Buyout Plan." The Class Members filed a second amended complaint on December 2, 1988.

After a four-day bench trial, the district issued its findings of fact and conclusions of law on February 22, 1990. It found GM liable for violating ERISA. The district court concluded that the Class were entitled to recover VTEP benefits, less the amount already paid to its members from the SUB Buyout. The court later awarded damages of $3.6 million, plus attorney's fees of $600,000.00 and expenses of $22,383.62, and set aside the contingent fee contracts between the plaintiffs and their attorneys. Final judgment was entered on June 21, 1990.

GM has timely appealed from both the liability decision and the award of attorney's fees. The Class cross-appealed the reduction of payable VTEP benefits by unemployment benefits and GM's funded weekly Supplemental Unemployment Benefit Plan (SUB Plan) payments already paid to its members. The Class also cross-appealed the court's order setting aside the attorney contingent fee contracts and the amount of the awarded attorney's fees.

The underlying facts of this action are comparatively simple. GM experienced a decline in sales during the middle and late 1980s and decided to close some of its older and less efficient assembly plants, such as the Norwood facility. It made this information public in November, 1986, and closed the plant in August, 1987. Approximately 3700 employees were affected, of which approximately 2900 had at least ten years seniority with GM. GM informed the employees that the Norwood plant would not reopen and that GM was eliminating assembly plants and reducing the workforce companywide.

The United Auto Workers (UAW) was the collective bargaining agent for all of the Class. The local bargaining agent was Local 674. During the period here in controversy, company/employee relations were governed by a companywide collective bargaining agreement that became effective October 26, 1987, which incorporated the October 22, 1984 SUB Plan. The SUB Plan provided laidoff employees with a limited number of weekly payments in addition to the unemployment benefits paid by the State of Ohio. If an employee elected to maintain employee status under this plan, the employee accepted the risk that the SUB benefits fund would become depleted or that the employee would become ineligible for collateral benefits provided after the expiration of state unemployment benefits.

GM's consideration of the Class's participation in VTEP was initiated during November, 1986, when the plant closing was announced. Thereafter, during the ensuing months to April 12, 1988, when GM made a VTEP program available to GM employees with more than ten years of seniority upon application, GM management had, in fact, been seriously considering this ultimate action without disclosing the internal progress of those considerations to the Class. To the contrary, throughout this entire period GM was instructing its management personnel to convey negative impressions to the Class indicating that VTEP would not be available for their participation and that the program was "dead in the water" as far as Norwood laid-off employees were concerned.

As a result of GM's misrepresentations during the period between September 1987 and February 1988, the Class elected to accept the SUB Buyout. When GM ultimately declared all employees with ten or more years seniority eligible to apply and participate in VTEP, it excluded the Class because GM asserted that its members were no longer considered to be GM employees, having relinquished and forfeited all of their employee rights as a result of accepting the SUB Buyout.

Following the four-day bench trial, the district court found that VTEP was an employee welfare benefit program, which created certain fiduciary responsibilities between GM and its concerned employees un-

**250**

der ERISA pursuant to 29 U.S.C. section 1104. The district court found that GM had been seriously considering offering VTEP, which was superior to the SUB Buyout, to the Class before its members accepted the latter plan as a result of GM's misrepresentations. Accordingly, the district court concluded that GM had violated its fiduciary duty not to make either intentional or negligent misrepresentations concerning the availability of participation in the preferable VTEP plan. The court also found that GM had "misled the employees of the Norwood plant by not disclosing that a VTEP-type plan would be offered or even that the local management was pursuing such a plan."

The court thereupon decided that the Class Members were entitled to participate in VTEP, minus the SUB Buyout they had received. The court also determined that the conduct of GM did not warrant the assessment of prejudgment interest. On June 21, 1990, the court awarded damages, fees, and costs, relying upon GM's calculations in awarding the Class $3,651,186.21 as damages. In addition, because GM did not object to the amount, the court awarded expenses of $22,383.62.

The district court accepted the calculation of hours and rates presented in the plaintiffs' application for attorney's fees, but disallowed projected future fees. The precise figure of $299,188.00 was rounded to $300,000.00 (the lodestar) and awarded to the plaintiffs' attorneys. Also based upon the reasoning in the fee application, the court awarded a multiplier of two, thus enhancing the total amount of attorney's fee payable to $600,000.00. The court noted that, aside from the anticipated future fees, GM did not object to the number or rate of the hours filed. The court declared the awarded attorney's fees to constitute full compensation and set aside any contractual obligation of any member of the class to pay attorney's fees. Thus, all sums advanced to the attorneys were to be returned to the Class members.

Initially, GM argued that the Class had no standing to participate in the VTEP during the period here in controversy.

Consequently, GM had no fiduciary responsibilities to its members.

■ ERISA defines a "participant" in an employee benefit plan to mean "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees or members of such organization." 29 U.S.C. § 1002(7). VTEP was a buy-out, by GM, of the Class members' vested benefits, including their pension plans. The Class members were eligible for such a plan at the time the asserted breach of fiduciary duty occurred and had no future eligibility requirements to fulfill. Contrary to GM's contentions that the pronouncements of *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115-19, 109 S.Ct. 948, 957-58, 103 L.Ed.2d 80 (1989), limited ERISA standing to employees with vested employee benefits, the *Firestone* Court addressed only the disclosure requirements of ERISA, 29 U.S.C. 1024(b)(4), as they applied to former employee participants and explicitly expressed no view "as to whether the [former employees] were 'participants' with respect to the benefit plans to which they sought information." *Firestone*, 489 U.S. at 118, 109 S.Ct. at 958. Since the Class was eligible to participate in the employee benefit plan, its members had standing to bring this suit under ERISA.

■ GM has also appealed the district court's conclusion that GM was under an ERISA fiduciary duty to disclose its considerations to permit Class participation in VTEP during the joint employee management meetings in September, 1987 and that its failure to do so coupled with management's negative statements concerning the Class's participation in VTEP violated its ERISA-imposed fiduciary duties.

The intent of Congress in enacting ERISA was to protect the "interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b). Section 1102 provides for two types of fiduciaries: the named fiduciaries in the written instrument creating the plan,

who control and manage the administration of the plan, 29 U.S.C. § 1102(a)(1); and the "discretionary" fiduciaries, who have some discretionary authority over the administration of the plan, 29 U.S.C. § 1002(21)(A).

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciary must exercise its duties

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B).

Company management often wears two hats in the administration of company benefit plans. Existing precedent has recognized the distinction between an employer's prerogative to initiate discretionary policy decisions such as creating, amending, or terminating a particular plan as compared to its fiduciary responsibilities to administer an existing plan for the benefit and interests of its participant-employees. *Sutter v. BASF Corp.*, 964 F.2d 556, 561–62 (6th Cir.1992); *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947–49 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *Musto v. American General Corp.*, 861 F.2d 897, 910 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

Misleading communications to plan participants "regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163 (6th Cir.1988) (citations omitted). Although noting that previous cases involved misrepresentations regarding an existing ERISA plan, the *Berlin* court concluded that material misrepresentations concerning a prospective or contingent ERISA plan would give rise to liability if the plan was under "serious consideration." *Berlin,* 858 F.2d at 1163.[1] The status of whether a plan was under "serious consideration" and any misrepresentations concerning the employer's consideration of a plan within an employer/employee relationship is a question of fact. *Berlin,* 858 F.2d at 1164.

■ As observed by the *Berlin* court, the duty to avoid material misrepresentations does not require the employer to predict an ultimate decision to offer a plan so long as it fairly discloses the progress of its serious considerations to make a plan available to affected employees. *Berlin,* 858 F.2d at 1164.[2] A fiduciary "has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship." *Eddy v. Colonial Life Ins. Co. of America,* 919 F.2d 747, 750 (D.C.Cir.1990). A fiduciary must give complete and accurate information in response to participants' questions, a duty that does not require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the bargaining process. *See e.g., Payonk v. HMW Industries, Inc.,* 883 F.2d 221, 226 (3d Cir.1989) (fiduciary not required to disclose status of business, as opposed to fiduciary, activities).

The district court's finding that GM had a VTEP-type plan for laidoff Norwood employees under "serious consideration" while it was conducting various management-Class meetings during September of 1987 is well-supported by the record. Not

---

**1.** In *Berlin,* Michigan Bell Telephone had previously offered an early retirement incentive to its employees, and was seriously considering extending the offer again when it discussed the future availability of the incentive to its employees and told them that such a plan would not be offered. *Berlin,* 858 F.2d at 1156–61, 1164.

**2.** If an employer has truthfully stated that an early retirement plan is a one-time offer, and then later decides to amend the plan, as the plan by its terms provides, for a second offering, no liability attaches to the first statement, nor to the employer's silence during the time that the decision to amend is being made. *Barnes v. Lacy,* 927 F.2d 539, 543–44 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991).

only was Class participation in VTEP under serious consideration during that time frame, but each rejection of the plan stimulated renewed interest and further management explorations to make it available to the Class participants.

Although *Berlin* addresses contingent and/or prospective benefit plans, GM has argued that it was confronted with a contingency it could not control: union approval. According to GM, it could not have implemented VTEP without the agreement of the UAW through the collective bargaining process. However, it was GM's serious consideration of the plan, rather than the union's approval of the plan, that triggered its fiduciary duties. Mindful of the significance and consequence of participation in VTEP by the Class, under the circumstances of the instant case, union obstacles notwithstanding, GM was impressed with a fiduciary duty to keep the Class and its members abreast of its consideration to permit their participation in VTEP so as to enable the Class members to arrive at a meaningful decision in selecting participation in an appropriate employee welfare benefit plan.

■ There appears to be a conflict between the court's judgment order, filed February 22, 1990, and its memorandum opinion entered on the same date. In its judgment order, the district court concluded that the Class was entitled to all the benefits of VTEP, "less all benefits received under the Supplemental Employment Benefits (SUB) buyout." However, in its memorandum order, the court directed the Class and GM to determine the amount payable to the Class based upon "VTEP-type benefits, less all benefits already paid under SUB, SUB buy-out, GIS, or any other appropriate program." The district court made no findings of fact at the conclusion of its hearing or in the mem-

orandum order awarding damages, filed on June 21, 1990.

Although it is not clear from the record, it appears that GM had deducted the unemployment compensation benefit payments and the Supplemental Unemployment Benefit Plan (SUB Plan) payments in calculating the Class members' SUB Buyout. The district court awarded the Class the sum of $3,651,186.21 based on GM's submitted damages calculations, which deducted not only the amounts received from the SUB Buyout, but also excluded both the unemployment compensation and the SUB Plan benefits that the Class members had received from GM. If that was what, in fact, had occurred, and regardless of the measure of compensation the district court intended to award, the damages award was improperly reduced by the amount of unemployment compensation benefit payments and SUB Plan benefit payments GM had already deducted in calculating the Class's SUB Buyout entitlement.

In the event that it was the intention of the district court to award the Class the sum it would have received had its members had the opportunity to elect VTEP rather than the SUB Buyout, then the Class has suffered a double reduction from the court's damage award. The terms of the VTEP plan negotiated and approved by the union and GM provided that there was to be no carve-out for the unemployment compensation benefit payments or the SUB Plan benefit payments already paid.[3] It appears from the record that the district court found that the Class members should have been treated uniformly with those employees who had been afforded the opportunity to elect VTEP. If so, then the class should have been reimbursed for the unemployment compensation benefit payments and SUB Plan benefit payments de-

---

**3.** GM's statement that its calculation of damages made "up the difference of what is owed the Class Members" ignores clear evidence in GM's own records that the employees who were offered the VTEP program were not required to reimburse GM for the unemployment compensation and weekly SUB Plan payments. For example, as embodied in the agreement between GM and the UAW dated October 8, 1987, the VTEP payment reduction was limited to any outstanding debts owed by the employee to the corporation, "including any unrepaid *overpayments to the employee under the SUB Plan or GIS Program.*" (emphasis added). By definition, these overpayments are sums in excess of the SUB Plan or collateral benefit payments the employee was otherwise entitled to receive.

ducted from its members' SUB Buyout, since those benefits had not been deducted from the sums paid to employees who had the opportunity to elect VTEP. In the absence of findings of fact, and in light of the conflict between the court's judgment order and memorandum order, the basis for the district court's damages award is confusing and is remanded for clarification and recalculation.

Since ERISA does not address the propriety of awarding prejudgment interest, such interest may be awarded in the discretion of the district court. *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir.1982) (prejudgment interest appropriate in ERISA action when employer failed to meet contractual obligations to trust funds). Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award. *Lodges 743 & 1746, International Association of Machinists & Aerospace Workers, AFL–CIO v. United Aircraft Corp.*, 534 F.2d 422, 447 (2d Cir.1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976).

The district court, without explanation, declined to impose prejudgment interest. However, in its memorandum opinion the court stated that "the conduct of GM does not warrant the assessment of prejudgment interest." Because an award of prejudgment interest is compensatory rather than punitive, the district court should have considered the position of the Class rather than the conduct of GM in arriving at a resolution of this issue. Thus, the denial of prejudgment interest on the damages award is remanded with instructions to support an award or denial of prejudgment interest with findings of fact incorporating its reasons for its decision.

GM has also challenged the attorney's fees awarded to the Class as excessive. GM argued that the district court erred in multiplying the lodestar figure awarded the plaintiffs' attorney by two without sufficient findings of fact to support the calculation. The Class defended the award and cross-appealed the district court's decision to set aside the contingent fee contracts.

Section 1132 provides that in any action under ERISA brought by a participant, "the court in its discretion may allow a reasonable attorney's fee and costs to either side." 29 U.S.C. § 1132(g)(1). Although the award of attorney's fees is reviewed under the abuse of discretion standard, *Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir.1991), in order for this court to review an award, "it remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award," *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). *Woolridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990); *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 636 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980).

The district court failed to make the requisite specific findings of fact to support its fee award. The district court awarded a multiplier of two based solely upon "the reasoning of Plaintiffs' counsel in the aforementioned Application for Attorney Fees." In this application, the attorney requested a multiplier of four, justifying the multiplier by the size of the attorney's firm, the delay in receipt for payment, and the fact that several other attorneys declined to participate in the case as outside counsel because of its risk factor. The district court's multiplier of two, which is a 200 percent enhancement of the lodestar, must be justified on the record. *Perotti*, 935 F.2d at 765. Although this court cannot assume that the district court awarded a multiplier of two for risk of contingent representation alone, to the extent the award was enhanced for the risk of contingency, it is invalid. *City of Burlington v. Dague*, — U.S. —, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

In addition, the district court provided no explanation of its decision to set aside the contingent fee contracts. Statutory awards of fees can coexist with private fee arrangements. *Venegas v. Mitch-*

*ell,* 495 U.S. 82, 87–89, 110 S.Ct. 1679, 1683, 109 L.Ed.2d 74 (1990) (section 1988 does not prevent lawyer from collecting contingency fee even though it exceeded statutory award); *Blanchard v. Bergeron,* 489 U.S. 87, 96–98, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (section 1988 award although counsel paid); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, Delaware Valley (II),* 483 U.S. 711, 726, 107 S.Ct. 3078, 3087, 97 L.Ed.2d 585 (1987) (section 1988 award although contingent fee agreement); *Blum v. Stenson,* 465 U.S. 886, 894–95, 104 S.Ct. 1541, 1546–47, 79 L.Ed.2d 891 (1984) (section 1988 award although counsel nonprofit legal aid). Thus, although an award may be enhanced to compensate for the contingency of recovery, "it is a mighty leap from these propositions to the conclusion that § 1988 also requires the District Court to invalidate a contingent-fee agreement arrived at privately between attorney and client." *Venegas,* 495 U.S. at 87, 110 S.Ct. at 1682.

 ERISA's fee-shifting section, like section 1988, provides that the party, not the attorney, is eligible for and receives the statutory award. 29 U.S.C. § 1132. Just as the party may receive an award of fees and costs, so may the party negotiate, waive, or settle that right. *Venegas,* 495 U.S. at 87–89, 110 S.Ct. at 1683. Thus, a statutory award of fees, alone, does not invalidate a contract for attorney's fees. Since the court failed to indicate why it applied a multiplier of two to the lodestar amount and why it set aside the private fee contracts between the Class and the attorneys, the fee award is reversed and remanded for a statement of detailed factual findings.

Accordingly, for the reasons expressed herein, the district court's determination of GM's liability for breaching its ERISA fiduciary duty to the Class is AFFIRMED. The award of damages and the award of attorney's fees are REVERSED and REMANDED for findings of fact and a statement of reasons.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that General Motors Corporation breached its duty under ERISA. The company had a fiduciary duty not to make intentional or negligent misrepresentations concerning the availability of participation in an employee welfare benefit program. I also concur in the remand for a clarification of damages and a finding of fact regarding the denial of the contingent-fee contracts. I must dissent, however, from the majority's opinion concerning pre-judgment interest and the remand for factfinding on the attorney's fees.

The district court denied an award of pre-judgment interest, which is a discretionary determination. Unless the district court abused its discretion, its decision should stand. *See In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 102 L.Ed.2d 779 (1989). In *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 990 (6th Cir.1982), we found that a remand was appropriate because the district court failed to address the propriety of awarding pre-judgment interest. That case is distinguishable from this case because the district court in this case specifically determined that an award of pre-judgment interest was not appropriate. Contrary to the majority's view, the district court's reasoning is sufficient to support the denial of pre-judgment interest. The majority argues that, because the district court examined General Motors' behavior, the district court was improperly applying a standard for punitive damages. My reading of the district court's decision, however, indicates that the district court simply found that GM's behavior toward the Class was not so egregious as to mandate additional, discretionary compensation through the award of pre-judgment interest. In so deciding, the district court did not abuse its discretion.

As regards the award of attorney's fees, I would affirm the district court. Under *Perotti v. Seiter,* 935 F.2d 761, 763 (6th Cir.1991), we apply an abuse-of-discretion standard of review to a district court's award of attorney's fees. The district court gave a concise and clear explanation

for the fee award by adopting the reasoning of the Class in its Application for Attorney Fees. The court did not abuse its discretion because the record was complete and the court's reasons were sufficient.