**Richard R. MUSE, et al., Plaintiffs–Appellants,**

**Patsy S. Adams, et al., Plaintiffs,**

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION, et al., Defendants–Appellees.**

No. 95–6261.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1996.

Decided Dec. 26, 1996.

---

G. Kennedy Hall, Jr. (argued and briefed), Kenneth S. Handmaker (briefed), Nancy T. Schook (briefed), Middleton & Reutlinger, Louisville, KY, Ronald E. Meisburg, Smith, Heenan & Althen, Washington, DC, for Richard R. Muse, Billie M. Marking, William C. Thorn, Thomas J. McDermott, Benjamin G. Pastrick, Thomas K. Leonard, J. Scott Hackney and Linden Stocker.

G. Kennedy Hall, Jr. (argued and briefed), Kenneth S. Handmaker (briefed), Nancy T. Schook (briefed), Middleton & Reutlinger, Louisville, KY, for William L. Elder.

Charles E. Shivel, Jr., Stoll, Keenon & Park, Lexington, KY, Michael S. Horne (argued & briefed), Jeffrey G. Huvelle, Susan L. Burke (briefed), Covington & Burling, Washington, DC, Howard G. Ziff, IBM Corporation, White Plains, NY, for International Business Machines Corporation.

Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; CARR, District Judge.[*]

BOYCE F. MARTIN, Jr., Chief Judge.

In this class action suit, plaintiffs appeal the district court's order granting their former employer's motion for summary judgment and dismissing their Employee Retirement Income Security Act claims with prejudice. Plaintiffs also appeal the district court's decision to deny their cross motion for summary judgment.

Plaintiffs retired from the Lexington, Kentucky site of International Business Machines Corporation pursuant to one of three voluntary early retirement programs offered by IBM from September 28, 1989, through March 31, 1990. The Voluntary Transition Payment Program, which we will follow the lead of parties and also call VTP–1, was offered on September 28, 1989, to IBM employees at four sites in the United States, including the Lexington site. Pursuant to VTP–1, eligible employees who terminated their employment prior to December 29 would receive one week of salary for every six months of service up to a maximum of fifty-two weeks of salary. On December 5, IBM offered the second Voluntary Transition Payment Program, which we will call VTP–2, to all IBM employees. Pursuant to VTP–2, eligible employees who terminated their employment after December 31, 1989 but before March 31, 1990, would receive the same benefits as those who accepted the VTP–1 program. Finally, on January 22, IBM offered the third Voluntary Transition Payment Program, a five-year pre-retirement leave of absence, which we will refer to as VTP/LOA. IBM extended the VTP/LOA to all IBM employees who were within five years of retirement eligibility and otherwise qualified for the VTP–1 and VTP–2 programs. VTP/LOA gave eligible employees who assumed leave status by March 31, 1990, the same benefits as those who accepted the VTP–1 and VTP–2 programs.

In the past, IBM had offered other early retirement programs to its employees whereby eligible employees received a bonus of two weeks of salary for every six months of service up to a maximum bonus of 104 weeks salary, along with an additional payment of $25,000.00. The plaintiffs knew of these former arrangements. The plaintiffs allege that they inquired of their supervisors whether such a program would be offered to them in the future, and, based on their supervisors' negative response, accepted the VTP–1, VTP–2, or VTP/LOA plan.

On August 1, 1990, IBM offered its Lexington employees yet another program, the Lexington Transition Payment Program or LTPP. Pursuant to LTPP, eligible Lexington employees who departed from IBM between September 28 and December 31, 1990 would receive the full bonus plan offered in the past, being two weeks salary for each six months of service with a 104 week cap plus $25,000.00. This plan, which was offered only to employees at the Lexington plant,

---

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

was adopted by IBM after the company made a decision to sell the Lexington plant to Clayton and Dublier, who required further downsizing.

On April 23, 1991, the plaintiffs sued IBM claiming five ERISA counts and five common law counts. On April 15, 1992, the district court certified the class and two sub-classes of plaintiffs and dismissed the plaintiffs' common law claims. Following extensive discovery, the parties filed cross-motions for summary judgment on November 30, 1993.

Plaintiffs allege that they would have chosen to participate in the superior benefit plan had IBM not negligently or intentionally misrepresented to the plaintiffs that no further early retirement plans would be offered. According to plaintiffs, IBM violated ERISA by breaching its fiduciary duty to plaintiffs; specifically, the plaintiffs claim that IBM was compelled to inform plaintiffs that the company was "seriously considering" the LTPP offer. In sum, plaintiffs argue that they should have been provided with more information to enable them to make more informed decisions with respect to the financial consequences of their retirement.

In its answer, IBM challenged plaintiffs' standing, claiming that all three of the VTP eligibility periods preceded plaintiffs' claim. IBM maintained that its primary goal was to reduce the number of employees at the Lexington facility. According to IBM, its serious consideration of the LTPP offer did not begin until June 19, 1990; all it seriously considered before that date was the general concept of closing, selling, or downsizing the Lexington facility in order to accomplish its primary goal.

Pursuant to 28 U.S.C. § 636(b), the district court designated a magistrate judge to hear and prepare proposed findings of fact and a recommendation for the disposition of the cross motions for summary judgment. The magistrate judge determined that no reasonable trier of fact could conclude that IBM seriously considered offering LTPP to its Lexington employees before April 19, 1990, the date IBM began negotiations to sell the Lexington plant. According to the magistrate judge, IBM's fiduciary responsibilities arose on April 19 and not before that date.

Consequently, the magistrate judge recommended that IBM's motion for summary judgment be granted and the plaintiffs' cross motion be denied.

Plaintiffs filed objections to the report and recommendation. They argued that the magistrate judge erred: first, by misapplying the law to the facts; second, by misinterpreting the concept of "serious consideration"; and third, by determining that the date of serious consideration was April 19, 1990. IBM filed a response to those objections. Reviewing the record, the district court made a *de novo* determination of these objections, overruled them, adopted the magistrate judge's recommendation, denied plaintiffs' motions for summary judgment, and granted IBM's motion for summary judgment.

We review grants of summary judgment *de novo.* The district court's order for summary judgment should stand if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Southeastern Oakland County Resource Recovery Auth. v. Madison Heights,* 5 F.3d 166 (6th Cir.1993).

Generally, employers have no fiduciary duty under ERISA regarding the adoption, modification, or termination of employee benefit plans. If, however, an employer gives *serious consideration* to implementing a second offering of severance plan benefits, it is well-settled that the employer has a fiduciary duty not to make misrepresentations to potential plan participants about the second offering. *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993). The law is not well-developed, however, with respect to whether fiduciaries must disclose plan changes that have been proposed or considered but not yet adopted.

The plaintiffs claim that the district court passed over certain undisputed facts which show that IBM began seriously considering offering an enhanced benefit plan before the

last plaintiffs left IBM on March 31, 1990. Those facts, plaintiffs argue, create a genuine issue of material fact which precludes the dismissal of their claims by summary judgment.

IBM responds to plaintiffs' claim by disputing what the facts show. According to IBM, the plaintiffs have produced no evidence to show that IBM's serious consideration of an enhanced plan began during the relevant period, that is, while plaintiffs were still debating the merits of the other plans. IBM suggests that case law and public policy compel a narrow interpretation of the term "serious consideration" which excludes the kind of internal deliberations which took place at IBM during the relevant period. *Drennan*, 977 F.2d at 251. The company further maintains that summary judgment was the only proper disposition given that the record contains no evidence indicating that the LTPP plan was anything other than IBM's reaction to the unique event of the eventual sale of the Lexington facility to Clayton & Dubilier.

Any misrepresentations IBM made to the plaintiffs *after* it gave serious consideration to the implementation of an enhanced incentive plan could constitute a breach of its fiduciary duty under ERISA. *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988). However, misrepresentations made *before* serious consideration trigger no such duty. *See Swinney v. General Motors Corp.*, 46 F.3d 512, 520 (6th Cir.1995)(quoting *Drennan*, 977 F.2d at 251). The critical question, therefore, is not *whether* IBM seriously considered offering the enhanced benefit plan but *when* the company seriously considered offering the plan.

In order to establish that IBM was subject to a fiduciary duty under ERISA, plaintiffs must establish that IBM seriously considered offering an enhanced benefit plan during the relevant period. Plaintiffs do not suggest a specific definition of the term "serious consideration," but argue only that the term is open-ended enough to encompass IBM's actions. Clear indicia of such consideration, they propose, are the studies IBM conducted and the November 1989 decision to take an accrual against 1989 earnings, allegedly based in part on those studies.

Until a plan is adopted, there is no plan, only the possibility of one. A fiduciary is therefore generally not required to disclose changes in a benefit plan before it is adopted. Congress' main purpose in imposing a disclosure requirement on ERISA fiduciaries was to ensure that "employees [would have] sufficient information and data to enable them to know whether the plan was financially sound and being administered as intended." H.R.Rep. No. 533, 93d Cong., 2d Sess. VI (1974), reprinted in 1974 U.S.C.C.A.N. 4639. Insisting on disclosure during the formulation of a plan and prior to its adoption would increase the likelihood of confusion on the part of beneficiaries. At the same time management would be unduly burdened by the continued uncertainty of what to disclose and when to disclose it. Moreover, any requirement of pre-adoption disclosure could impair the achievement of legitimate business goals. For example, if IBM had been forced to disclose prematurely the fact that it was studying the closing or selling of the Lexington site, which manufactured most of IBM's typewriters, the information could have been used by competitors to damage IBM seriously.

The exception of serious consideration does not apply until a company focuses on a particular plan for a particular purpose. An unique event, the sale of the Lexington plant, triggered the offering of the enhanced plan. Although the sale had been contemplated earlier along with other options for the Lexington plant, it was not until IBM made a definite decision to sell the Lexington plant and was told by the buyer that further downsizing was necessary that IBM focused on this particular plan for a particular purpose. *Swinney*, 46 F.3d at 520 ("changing circumstances ... might require an employer to sweeten its severance package"). Here, there is no convincing evidence that suggests that IBM studied the possibility of enhanced benefit plans for any reason other than to gain a general appreciation of its options. Plaintiffs' concept of the term "serious consideration" is inconsistent with the ERISA goals of encouraging employers to offer welfare benefit plans and of minimizing the financial and administrative burdens on employers. *New York State Conference of*

*Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* — U.S. —, —, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 158, 105 S.Ct. 3085, 3098, 87 L.Ed.2d 96 (1985). This Court has also recently stated that "an employer should not be forever deterred from giving its employees a better deal merely because it did not clearly indicate to a previous employee that a better deal might one day be proposed." *Swinney,* 46 F.3d at 520. Even if the plaintiffs had proved that IBM seriously considered the plan, they failed to prove that IBM breached its fiduciary duty under ERISA. Plaintiffs claim that IBM materially misrepresented facts concerning the incentive plan and failed to disclose the progress of its serious consideration to plaintiffs. The Supreme Court recently held that plan administrators who "participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense" fail to act "solely in the interest of the participants and beneficiaries," and violate the duty of loyalty in Section 404(a)(1) of ERISA. *Varity Corp. v. Howe,* — U.S. —, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

The record does not contain sufficient evidence to establish that IBM knowingly deceived plaintiffs about the possibility of an enhanced plan. The only suggestion of any improper behavior by IBM is the June 14, 1990, memo from an IBM employee warning against the enhanced plan because of the expected back-lash by the retirees covered by any of the three VTP plans. While it suggests that the employee knew the impact of IBM's actions, the memo in no way suggests that during the relevant time period the employee or IBM had engaged in a targeted plan to deceive the plaintiffs and thus reduce their benefits. In fact, the memo appears to show that the employee, if not IBM, had not previously contemplated the enhanced plan in any concrete fashion. Plaintiffs ask this court to reinstate their five common law claims either as federal ERISA common law claims or as state common law claims. In its broad preemption provision, ERISA provides that it "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 514(a), 29 U.S.C. § 1144(a) (1988).

The nature of ERISA preemption is not altered by the fact that some plaintiffs may be left without a meaningful remedy. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 943 (6th Cir.1995). State law claims based on an employer's alleged misrepresentations about the availability of a benefit plan are sufficiently "related to" an ERISA plan to be preempted by the statute. *Swinney,* 46 F.3d 512 (6th Cir.1995).

Plaintiffs also contend that if their state law claims are preempted, those claims may be repackaged and saved as claims arising under federal common law. However, federal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous. *Flacche v. Sun Life Assurance Co.,* 958 F.2d 730, 735 (6th Cir.1992). Plaintiffs' state law claims do not fall into that category; they seek to recover for conduct that falls within the purview of Section 404 of ERISA. Plaintiffs' common law claims are preempted by ERISA and cannot be reasserted as separate claims arising under federal common law.

Judgment AFFIRMED.