**Joseph EASA, Plaintiff,**

v.

**FLORISTS' TRANSWORLD DELIVERY ASSOCIATION, Defendant.**

No. 97–CV–73006–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 1998.

<hr>

Donald A. Gasiorek, Marcy B. Spitz, Southfield, MI, for Plaintiff.

Daniel J. Bretz, David A. Hardesty, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DUGGAN, District Judge.

### Opinion

This matter is currently before the Court on defendant's motion for summary judgment. Plaintiff has filed a response in opposition to the defendant's motion. On April 9, 1998, the Court held a hearing on defendant's motion. For the reasons that follow, the Court grants defendant's motion for summary judgment.

### Background

Plaintiff commenced employment with defendant on February 21, 1966. As an employee, plaintiff eventually became eligible for retirement benefits pursuant to defendant's pension plan. In September of 1992, defendant decided to eliminate plaintiff's position. Defendant offered plaintiff the option of reassignment to a position as an administrative manager with a substantial reduction in salary, or plaintiff could avail himself of defendant's early retirement program. Defendant's director of business management, Jay Kurtzman, offered plaintiff an early retirement package with the stipulation that plaintiff must make a decision on or before September 30, 1992. Following this initial offer, plaintiff engaged in negotiations with defendant's human resources director, Tom Davenport, inquiring about the possibility of

continuing his severance pay until he reached age 55. On September 21, 1992, Davenport offered to extend plaintiff's collection of his salary through August 22, 1994, the date of plaintiff's 55th birthday. Defendant then sent plaintiff a letter setting forth the anticipated benefits payable under such an option. According to defendant's letter, this extension would allow plaintiff to qualify for an early retirement benefit of $2,580.67 per month at age 55, or a lump sum benefit of over $250,000.00. Plaintiff would later learn that the monthly figure quoted in this letter was inaccurate.[1]

Defendant contends that the figures represented in the September 21 letter were obtained from the actuary for the pension plan, Robert O'Keefe, of William Mercer, Inc. In order to obtain an estimation of the benefit due to plaintiff, defendant forwarded to O'Keefe plaintiff's salary and service information. O'Keefe then calculated the amounts for which plaintiff may have been eligible based on the normal retirement age of 65, and the early retirement option available at age 55. According to defendant, the "error" in the communication of the figures occurred when Mary Schoenberg, defendant's benefits administrator, transferred the figures obtained from O'Keefe's report to the letter which she prepared for Davenport's signature. Schoenberg admits that she reported the *normal* retirement estimated monthly benefit amounts, i.e. $2,567.38 for a one-year severance period and $2,580.67 for the extended severance, instead of the actual estimated *early* retirement monthly benefits of $1,643.12 and $1,651.63, respectively. Schoenberg then forwarded the letter to Davenport for his review and signature.

Plaintiff, contends that, in reliance upon the figures set forth in defendant's September 21, 1992 letter, he determined that the benefits would be adequate and therefore he elected to pursue the early retirement option. On September 30, 1992, plaintiff accepted defendant's offer of the early retirement package. On November 7, 1994, plaintiff received a letter from defendant setting forth the procedures to obtain his pension benefit and the account balances from the fund. In the November 7, 1994 letter defendant indicated that plaintiff's monthly retirement benefit beginning in the year 2004 (plaintiff's age 65) would be $2,471.59. Plaintiff noticed that this amount deviated from the $2,580.67 figure defendant previously quoted to him to be his retirement benefit available at age 55. Defendant's actuary later informed plaintiff that the benefit available to him at age 55 was $1,652.00. Plaintiff asserts that he was then forced to take the lump sum distribution of $274,719.14 as a result of the "huge" discrepancy in the numbers.

On June 23, 1997, plaintiff filed the present ERISA action against defendant alleging that the defendant should be equitably estopped from denying plaintiff benefits pursuant to 29 U.S.C. § 1132(a)(3), and that defendant breached its fiduciary duty under 29 U.S.C. § 1132(a)(2).[2] Defendant now seeks summary judgment on plaintiff's claims asserting that plaintiff cannot state a claim for equitable estoppel because the Sixth Circuit has not sanctioned the application of the equitable estoppel doctrine in cases involving employee pension plans; it has only applied this doctrine to employee welfare plans. Defendant further argues that even if equitable estoppel applied to actions relating to pension benefit plans, plaintiff's claim must fail because he cannot establish that defendant made the incorrect statement with knowledge of the true facts, a necessary requisite to an equitable estoppel claim. With respect to plaintiff's claim for breach of fiduciary duty, defendant claims that in order to be actionable in the Sixth Circuit, defendant's misrepresentation must be intentional.

Plaintiff counters that existing Sixth Circuit precedent relates only to the court's pronouncement on the viability of an equitable estoppel claim as it relates to a welfare plan; thus, plaintiff contends that no express determination has been made as to claims

---

**1.** Plaintiff does not contend that the information relating to the lump sum benefit was incorrect.

**2.** Plaintiff's original complaint also contained an allegation that defendant's denial of benefits was arbitrary and capricious. On September 25, 1997, the Court held a hearing on a motion to dismiss filed by defendant and dismissed that portion of the plaintiff's claim.

involving employee pension plans. As to the breach of fiduciary duty claim, plaintiff states that the law is clear that any breach, either intentional or negligent, is sufficient to state a claim for a breach of fiduciary duty. Accordingly, plaintiff contends that defendant's miscalculation of the amount of benefits due was a negligent breach of fiduciary duty.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment when "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "There is no genuine issue of material fact for trial unless, by viewing the evidence in favor of the nonmoving party, a reasonable jury could return a verdict for that party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Boddy v. Dean,* 821 F.2d 346, 349 (6th Cir.1987). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which establish the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Potters Medical Center v. City Hospital Association,* 800 F.2d 568, 572 (6th Cir.1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *Moore v. Philip Morris Companies,* 8 F.3d 335, 339–40 (6th Cir.

1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548.

### Analysis

### Plaintiff's Equitable Estoppel Claim

■ Defendant, relying on *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991) argues that it is entitled to an entry of summary judgment on plaintiff's equitable estoppel claim because the Sixth Circuit has not recognized the viability of such a claim in relation to an employee pension plan. Plaintiff attempts to distinguish *Armistead* on the basis that the court in *Armistead* declined to directly address the application of equitable estoppel to other circumstances.

In order to resolve the parties' dispute over the viability of an equitable estoppel claim under the facts of the instant case, the Court must ascertain the scope of the Sixth Circuit's decision in *Armistead.* In *Armistead,* the court held that in cases where the employer pays for benefits out of his or her own assets, "the purpose of Congress in enacting 29 U.S.C. § 1102(a)[3] would not be frustrated by recourse to estoppel principles, which are generally applicable in all legal actions." *Id.* at 1300. The Court, in permitting plaintiff's estoppel claim, rejected in part the Eleventh Circuit's decision in *Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986), but made a significant distinction directly applicable to the present case.

The Court distinguished between the principles applicable to pension plans and those applicable to welfare plans stating:

> The substance of the *Nachwalter* court's opinion is that Congress's purpose in requiring that benefit plans be in writing can only be served if the plan is enforced as written. When a party is estopped from asserting a right in a written plan, the plan as enforced is not the same as the plan as written. For this reason, ERISA would seem to preclude application of equitable

---

3. 29 U.S.C. § 1102 requires that employee benefit plans must be in writing.

estoppel to disputes over benefit plans under the statute.

*Armistead,* 944 F.2d at 1300. Further, the court implicitly appears to have limited its allowance of an equitable estoppel claim to those cases involving welfare plans, by stating:

> This reasoning applies primarily to cases involving pension plans and is much less cogent when welfare benefit plans are at issue. The reason is that pension benefits are typically paid out of funds to which both employers and employee [sic] contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants or discrete groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced.

*Id.* It is undisputed that the employee benefit plan at issue in the instant case is a pension plan from which contributions were obtained from both the employer and the employee. Plaintiff's entitlement to benefits, although mistakenly communicated to him, was predetermined by "actuarial assumptions" inherent in the plan's provisions for benefits upon retirement. If plaintiff were allowed to prevail on his theory, the effective terms of the written plan would be modified by the miscommunication of the employer. Clearly, this result is not contemplated by the Sixth Circuit's decision in *Armistead. See also, Richards v. General Motors Corp.,* 876 F.Supp. 1492, 1508 (E.D.Mich.1995) (noting that the *Armistead* decision "distinguished between actions involving insurance benefit plans or welfare plans, in which equitable estoppel claims are allowed ... from those involving pension plans, in which equitable estoppel claims are not allowed...." and concluding that the plan at issue was a pension plan in which an equitable estoppel theory was not available to plaintiff.)

Moreover, the Sixth Circuit recently determined that the availability of an equitable estoppel claim in the context of a welfare plan was limited to those circumstances in which the plan documents were ambiguous.

*Sprague v. General Motors,* 133 F.3d 388 (6th Cir.1998). In *Sprague,* a class of early retirees of General Motors brought suit alleging, *inter alia,* that the company should be equitably estopped from amending the terms of its written welfare plan to deny benefits previously available under the plan. The court, in determining that GM's written plan documents unambiguously reserved the right to modify or terminate the plan, stated "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague,* 133 F.3d at 404. Applying the court's reasoning to the instant case, the terms and formulas for computation of plaintiff's right to pension benefits were set forth in defendant's plan summary, a copy of which plaintiff retained in his possession. Whatever can be said about the complexity of the formula, the provisions for arriving at its intended benefit available to the retiree are unambiguously set forth in the plan summary available to plaintiff. Given the Sixth Circuit's recent limitation on the viability of the estoppel claim in the context of the unambiguous terms of the welfare plan at issue in *Sprague,* the Court doubts the propriety of the application of estoppel principles to the plaintiff's claim. Accordingly, the Court declines the opportunity to extend the scope of the *Armistead* decision to encompass the facts presented here.

■ Moreover, assuming *arguendo,* that the theory of equitable estoppel is available under the facts presented here, the Court does not believe that plaintiff can establish the presence of all of the requisite elements. In *Armistead,* the court set forth the elements of a claim of equitable estoppel as follows:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party assert-

ing the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead,* 944 F.2d at 1298. With respect to the second element, plaintiff has not alleged, nor do the proofs submitted thus far to the Court reveal, that the defendant knew that the quoted figures in the September 21, 1992 letter to plaintiff were inaccurate. *See Sutter v. BASF Corp.,* 964 F.2d 556, 563 (6th Cir.1992) (plaintiff's equitable estoppel claim failed in part because plaintiff did not demonstrate that BASF intentionally deceived them). In addition, the Court does not believe that plaintiff's reliance upon the figures quoted in the September 21 letter to plaintiff was justified. In *Sprague, supra,* the Sixth Circuit similarly concluded that plaintiffs' reliance on the employer's representation was not justified where such representations controverted the written terms of the ERISA plan document. With respect to the reliance element, the court stated:

[A] party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Sprague,* 133 F.3d at 404. Therefore, for the reasons stated above, the Court grants defendant's motion with respect to plaintiff's equitable estoppel claim.

### Plaintiff's Claim for Breach of Fiduciary Duty

Defendant, while acknowledging that as plan administrator it undeniably owed plaintiff a fiduciary duty under ERISA, maintains that it is entitled to an entry of summary judgment on plaintiff's breach of fiduciary duty claim because "plaintiff must plead and prove more than mere mistake; the cause of action requires willful or bad faith conduct on the part of defendant." (Df.'s Mot. S.J. at 16). Conversely, plaintiff states that this is an inaccurate statement with respect to the standard applicable to breach of fiduciary duty claims in the Sixth Circuit. Instead,

plaintiff advocates application of principles of trust law which indicate that the trustee is "under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and the amount of the trust property... ." Restatement 2d of Trusts, § 173. In addition, plaintiff argues that Sixth Circuit does not require a finding of willful conduct or bad faith in order to state a claim of breach of fiduciary duty.

Plaintiff relies on the Sixth Circuit's decision in *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1164 (6th Cir.1988) where the court, *in dicta,* stated that a plan fiduciary has a "duty not to make misrepresentations, either *negligently* or intentionally... ." (emphasis added). In addition, plaintiff points to *Drennan v. General Motors Corp.* 977 F.2d 246, 251 (6th Cir.1992), in which the court stated "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan or the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." Further, in *Drennan* the court acknowledged that a fiduciary must "give complete and accurate information in response to participants' questions... ." *Id.* However, the Court notes that these statements in *Drennan* were made in that portion of the court's opinion noting that *Berlin* established the applicability of a fiduciary duty claim to cases involving misrepresentations about prospective or contingent ERISA plans where those plans were under "serious" consideration by the employer. The Court notes that neither of the Sixth Circuit's opinions in *Berlin* or *Drennan* dealt with the issue of whether misrepresentations in a breach of fiduciary duty context were actionable under a negligence standard.

In contrast, defendant relies upon the Sixth Circuit's decision in *Muse v. Int'l Bus. Machines Corp.,* 103 F.3d 490 (6th Cir.1996). In *Muse,* the plaintiffs claimed that defendant breached its fiduciary duty to plaintiffs by not providing plaintiffs with "more information to enable them to make more informed decisions with respect to the financial consequences of their retirement." *Id.* at

493. The court rejected plaintiffs' claim of breach of fiduciary duty stating:

The Supreme Court recently held that plan administrators who "participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense" fail to act "solely in the interest of the participants and beneficiaries...."

The record does not contain sufficient evidence to establish that IBM knowingly deceived plaintiffs about the possibility of an enhanced plan.

*Id.* at 495.

Defendant also relies upon the District Court for the Eastern District of Wisconsin's decision in *Kuehl v. Chrysler Pension Plan,* wherein the court held "To establish liability for breach of a fiduciary duty, the plaintiff must prove willful or bad faith conduct." 895 F.Supp. 1147, 1155 (E.D.Wis.1995) (quoting *Burke v. Latrobe Steel Co.,* 775 F.2d 88, 91 (3rd Cir.1985)). Defendant maintains that underlying facts in *Kuehl* are analogous to those of the instant case because the plaintiff in *Kuehl* relied upon inaccurate information supplied by the plan administrator regarding allocation of years of credited service in making his early retirement decision. Plaintiff claimed that the defendant plan informed him that all of his years of service would be credited to the defendant plan if he chose it. Upon selecting defendant's plan, the plaintiff in *Kuehl* learned that all of his service would not be credited which changed his benefit from $775.15 to an actual benefit of $414.12. The *Kuehl* Court stated "Trustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect." *Id.* at 1155. (quoting *Challenger v. Local Union No. 1,* 619 F.2d 645, 648 (7th Cir. 1980)).

■ This Court believes that the Sixth Circuit's decision in *Muse* in which it rejected a claim of breach of fiduciary duty because the fiduciary did not "knowingly" deceive the plaintiffs leads this Court to conclude that to impose liability on a fiduciary under ERISA for breach of fiduciary duty, the fiduciary's conduct must constitute more than a "clerical error." This conclu-

sion is supported by the decision in *Kuehl* which declined to impose liability simply because the fiduciary made an incorrect interpretation.

The Court also believes that a recent decision of the Seventh Circuit is instructive by analogy and closely approximates the circumstances with which the Court is presently faced.

In *Schmidt v. Sheet Metal Workers' Nat. Pension Fund,* 128 F.3d 541 (7th Cir.1997) the Seventh Circuit confronted an ERISA complaint with allegations of breach of fiduciary duty and equitable estoppel against the defendant pension fund. The plaintiff in *Schmidt,* facing a terminal illness, desired to change the beneficiary of his pension benefit to name his son as the sole beneficiary. Plaintiff contacted the defendant fund's administrative office and spoke with Eunjae Lee, a pension fund analyst. Plaintiff explained the situation to Lee and requested she send him a form to change his designation of beneficiary. In response to plaintiff's request, Lee sent a "Pension Vesting Application" which plaintiff promptly completed and returned to defendant. Upon plaintiff's death, plaintiff's son learned that he been sent and subsequently filled out and returned an erroneous form. The proper mechanism for designating the beneficiary was completion of a "benefit designation card" included in the front of the fund's pension plan booklet. The provisions of the plan booklet provided for distribution in the absence of a designated beneficiary to an individual's spouse, or in the absence of a spouse, to the children equally. Because plaintiff received the inappropriate form from Lee, the benefits were distributed to plaintiff's surviving son and daughter.

In analyzing plaintiff's fiduciary duty claim, the court first clarified the distinction between the fiduciary status of the plan trustees and Lee. The court stated that "It is clear that Lee herself was not an ERISA fiduciary, as she merely performed ministerial and clerical functions relating to the administration of the Plan; she had no discretionary authority or control in the tasks she was assigned." *Id.* at 547 (citing 29 C.F.R.

§ 2509.75–8, D–2 ("a person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary ....")) In noting the importance of the fact that Lee made the miscommunication, the court stated "Significantly, no evidence suggests that the Trustees either authorized, participated in, or had knowledge of Lee's misstatement, or that the Trustees deliberately withheld information from Lee about the proper means of making a beneficiary designation." *Id.* The court then summarized the inherent distinction with respect to Lee and the plan fiduciaries stating, "this is a case in which the Trustees provided complete and correct information to participants both in the Plan itself and in the Plan Booklet only to have a ministerial employee make a negligent misrepresentation in response to a single question from a single participant." *Id.* The Seventh Circuit declined to hold the plan trustees responsible for Lee's negligent misrepresentation absent a finding of any involvement on the part of the Trustees with Lee's misstatement or a showing "that the Trustees failed to exercise due care either in hiring or retaining Lee, or in training her to respond to inquiries from plan participants." *Id.* at 548.

■ The Court believes that the facts of the instant case mirror those of *Schmidt* as the communication of inaccurate information regarding the amount of the benefits to which plaintiff was entitled upon retirement was made by Mary Schoenberg, an employee of defendant arguably functioning in a ministerial capacity.[4] Like the trustees in *Schmidt*, the Court believes that defendant, as a plan fiduciary, was under a duty to plaintiff to accurately convey information to the plaintiff; however, there is no evidence to suggest that anyone, acting in a fiduciary capacity, e.g., Tom Davenport,[5] either authorized, participated in, or had knowledge of Schoenberg's mistake in transferring the fig-

ures. Stated differently, plaintiff makes no allegation that defendant deliberately misled plaintiff in the dissemination of benefit information to him. The record does not reflect that defendant failed to exercise due care in hiring Schoenberg or in training her to respond to inquiries from individuals like the plaintiff.

In addition, like the plaintiff in *Schmidt*, plaintiff was privy to information in the plan documents which he had in his possession enabling plaintiff to calculate the benefits due him under either normal or early retirement options. On this issue, the court in *Schmidt* added the following caveat to its opinion:

> We hasten to add, however, that our resolution of this case depends in large measure on the fact that the Trustees provided complete and accurate information in the Plan and Plan Booklet they distributed to all participants. Although ERISA fiduciaries do not necessarily satisfy their fiduciary obligations merely by complying with the disclosure requirements imposed by the statute ... we believe that the adequacy of the relevant disclosures in the written plan material is an important consideration in a circumstance like this where a non-fiduciary agent subsequently provides erroneous information in response to a question from a single participant.

*Schmidt,* 128 F.3d at 548 (citations omitted). Cognizant of the Seventh Circuit's concern, the Court believes that defendant's written plan adequately sets forth the formula for calculation of the benefits due plaintiff. Any "deviation" from the plan's documents occurred when Mary Schoenberg, arguably acting in a non-fiduciary capacity, *see supra* note 4, provided erroneous information in the letter sent to plaintiff. Plaintiff could have readily ascertained the mistake by merely referring to the formula for calculation of benefits set forth in the plan documents provided to him by defendant. Accordingly, the Court does not believe that defendant breached any fiduciary duty owned to the

---

4. Schoenberg described her duties as "Mostly, I would just handle the paperwork. I was shuffling the paperwork." (Schoenberg Dep. at 7, Pl.'s Exh. G).

5. Davenport acknowledged his duties included, "Assistance with those who chose to, ultimately, retire in getting pension estimates for them. Basic interpretation of the plan." (Davenport Dep. at 8, Pl.'s Exh. F).

plaintiff under the circumstances presented here.

Further, the Court believes that imposing liability on the fiduciary based on the facts of the instant case, would violate the fundamental policy underlying ERISA which provides that pension plans must be in writing. *See* 29 U.S.C. § 1102(a)(1). As the Seventh Circuit recently stated, "The utility of reducing retirement promises to writing and avoiding arguments about who said what to whom are so fundamental to both ERISA and contract law that an extension of the writing requirement to all long-term commitments is an inescapable ingredient of the federal common law slowly accumulating in ERISA's shadow." *Frahm v. Equitable Life Assurance Society of the United States,* 137 F.3d 955, 957 (7th Cir.1998). Moreover, the Court's holding today does not afford the plaintiff anything less than those benefits to which he had been entitled had Schoenberg not made an error in the transcription of the figures. To hold otherwise, would not only allow deviation from the plan as written and communicated to participants, but would afford plaintiff a "windfall" to which this Court does not believe he is entitled under ERISA.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's breach of fiduciary duty claim.

For the reasons set forth above,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED.**