# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3956

———————

Duane L. Christensen,               *
                                          *

    Plaintiff- Appellant,         *

                                         *   Appeal from the United States
    v.                             *   District Court for the
                                         *   District of Nebraska.

The Qwest Pension Plan, et al.,   *

                                         *

    Defendants - Appellees.     *

———————

Submitted:  May 15, 2006
Filed:  September 11, 2006

———————

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

———————

LOKEN, Chief Judge.

Considering retirement, Qwest Communications employee Duane Christensen requested and received several estimates of his expected pension benefit from the Qwest Pension Plan ("the Plan"). Christensen retired, and the Plan conducted a final audit which determined that his benefit under the annuity option he selected would be $1484 per month, rather than the final pre-retirement estimate of $1754 per month. The Plan denied Christensen's claim for the greater amount. He then filed this action under the Employee Retirement Income Security Act ("ERISA") against the Plan and its administrators, the Qwest Pension Plan Employee Benefits Committee ("the Committee"). He seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) for

the Committee's alleged breach of fiduciary duty, and statutory penalties under 29 U.S.C. § 1132(c)(1)(B) for the Committee's alleged failure to comply with his request for required benefits information. Christensen appeals the district court's[1] grant of summary judgment in favor of the Plan and the Committee. Christensen v. Qwest Pension Plan, 376 F. Supp. 2d 934 (D. Neb. 2005). Reviewing the grant of summary judgment *de novo*, we affirm. See Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995) (applying customary standard of review in an ERISA case).

## I. Background

The Plan is available to employees of Qwest Communications International Inc. ("Qwest"). The Plan has more than 105,000 participants. The lengthy Summary Plan Description advises participants that they may obtain pension benefit estimates by e-mail or by telephone, but adds the following caution:

> These estimates are not binding; if a mistake is made, you will be paid the corrected amount, even if less than the estimated amount.

The Plan uses an automated system to promptly answer an average of 115,000 telephone and e-mail benefit estimate requests per year. The system is run by Watson Wyatt, a vendor hired by the Committee to handle ministerial plan administration functions. Watson Wyatt's estimating system uses data from a Qwest database of historical employee payroll information.

Christensen requested five benefit estimates by telephone between March and November 2003. The estimates ranged from $1715 to $1763 per month depending on the proposed retirement date. Each estimate listed Christensen's "Pension Band

---

[1]The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska.

Number" as 119. As Christensen knew, pension bands were assigned to various job titles by the applicable collective bargaining agreement and were an important factor in pension benefit calculations. Each written estimate included the "estimates are not binding" disclaimer. When Christensen decided to retire, he received and signed a Benefit Option Election Form specifying that he would receive $1754 per month. This form, too, warned that the estimated benefit amount "is subject to change, based on a final review of payroll data and applicable plan provisions." The last estimate, like the earlier estimates, was prepared using the Watson Wyatt automated system.

When an employee retires, the Plan performs a final benefit calculation based upon a manual audit of the employee's payroll history. In Christensen's case, the audit uncovered an error. In February 2000, he was demoted to a position in pension band 109, after serving only four months in a pension band 119 position. Therefore, under the Plan, he was not entitled to pension benefits calculated entirely under pension band 119, as the benefit estimates had assumed. Correcting this error reduced his benefit to $1484 per month. Christensen admits that this was the benefit due him under the terms of the Plan. The record contains no evidence explaining the source of the error (for example, the Qwest payroll database could have overlooked Christensen's demotion, or Watson Wyatt could have incorrectly entered the data into its system). Nor is there evidence that any employee of Qwest or the Plan or Watson Wyatt knew of the error prior to the manual audit conducted after Christensen retired.

## II. The Breach of Fiduciary Duty Claims

Christensen argues that the plan administrators breached ERISA fiduciary duties by providing incorrect pension benefit estimates. When an ERISA fiduciary deals with plan participants and beneficiaries, ERISA imposes both a statutory duty of loyalty -- to discharge plan administration duties for the exclusive purpose of providing benefits and paying expenses, 29 U.S.C. § 1104(a)(1)(A) -- and a statutory duty of care -- to discharge those duties "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would

use," 29 U.S.C. § 1104(a)(1)(B). We assume Christensen is claiming a breach of both duties. The district court dismissed these claims because there is no evidence that any fiduciary authorized, participated in, or knew about the estimating error, and no evidence that the defendants acted in bad faith, deliberately misled Christensen, or failed to exercise due care in dealing with Watson Wyatt.

A. The Duty of Loyalty. The duty of loyalty embodies the "obligation to deal fairly and honestly with all plan members." Shea v. Esensten, 107 F.3d 625, 628 (8th Cir.), cert. denied, 522 U.S. 914 (1997). The duty is breached when a plan administrator participates "knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense." Varity Corp. v. Howe, 516 U.S. 489, 506 (1996); see Wilson, 55 F.3d at 405.

Christensen argues that it is a breach of fiduciary duty to knowingly cause a plan beneficiary to retire based on materially overstated benefit estimates. That is no doubt an accurate application of the duty of loyalty as defined in Varity, 516 U.S. at 506 ("lying is inconsistent with the duty of loyalty"), and in Shea, 107 F.3d at 628-29. But as the district court noted, Christensen presented no evidence that Plan administrators -- that is, the Committee[2] -- knowingly provided false or materially overstated estimates of his pension benefit.

Christensen argues that the Plan's administrators knew that three or four benefit estimates per month were incorrect by 10% or more, yet they continued to use the flawed system because it would be costly and time-consuming to perform manual audits of each request. This contention ignores the undisputed evidence that

---

[2]Watson Wyatt was not a Plan fiduciary because it performed "purely ministerial functions . . . for an employee benefit plan within a framework of policies [etc.] made by other persons." 29 C.F.R. § 2509.75-8, D-2; see Ince v. Aetna Health Mgmt., Inc., 173 F.3d 672, 675 (8th Cir. 1999). The Qwest employees who maintained the payroll database were also not ERISA fiduciaries.

participants were warned in the Summary Plan Description and again in the benefit estimate documents that estimates were non-binding and subject to a final determination of the benefits mandated by the Plan. The evidence shows that the administrators knew that mistakes happened in the estimate process; indeed, there was evidence the pension manager worked with Watson Wyatt to eliminate recurring errors. But it is not disloyal to plan participants and beneficiaries to adopt a prompt, inexpensive, substantially accurate benefit estimate system that is used 115,000 times a year, accompanied by adequate disclosures that the estimates are non-binding and may not always be accurate. A mistake in the administration of a pension plan is not a violation of the duty of loyalty absent evidence that plan administrators acted in the interests of someone other than participants and beneficiaries. Thus, Christensen's duty of loyalty claim is without merit.

B. The Duty of Care. Though Christensen's appellate briefs give the issue less emphasis, the duty of care issue requires careful consideration because some of our sister circuits have broadly stated that an ERISA fiduciary "has an obligation to convey complete and accurate information material to the beneficiary's circumstance" in response to a participant's request for information. Krohn v. Huron Mem. Hosp., 173 F.3d 542, 547 (6th Cir. 1999); see Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 380 (4th Cir. 2001). This articulation suggests a near-absolute duty of full and accurate disclosure, or at least a negligence standard of liability. However, other circuits construe the duty of care more narrowly. See Frahm v. Equitable Life Assur. Soc., 137 F.3d 955, 958-59 (7th Cir.), cert. denied, 525 U.S. 817 (1998).

We need not define the outer boundary of duty-of-care liability in this case. It is undisputed that Christensen received erroneous benefit estimates because the wrong pension band was entered into the Watson Wyatt automated system. The record does not reveal who made this mistake, but it was clearly the result of a clerical or ministerial error made by someone at Qwest or at Watson Wyatt who was not at the

time acting in a fiduciary capacity. The Department of Labor's regulations directly address the ERISA fiduciary's duty of care in these situations:

> A plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that he has exercised prudence in the selection and retention of such persons. The plan fiduciary will be deemed to have acted prudently . . . if, in the exercise of ordinary care in such situation, he has no reason to doubt the competence, integrity or responsibility of such persons.

29 C.F.R. § 2509.75-8, FR-11. Citing this regulation, at least two circuits have upheld the grant of summary judgment in favor of ERISA fiduciaries accused of breaching the duty of care by providing incorrect benefit projections or the wrong form for designating plan beneficiaries. See Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 546-48 (7th Cir. 1997), cert. denied, 523 U.S. 1073 (1998); Hart v. Equitable Life Assur. Soc., 75 Fed. App'x 51, 53-54 (2d Cir. 2003); accord Fitch v. Chase Manhattan Bank, N.A., 64 F. Supp. 2d 212, 228-31 (W.D.N.Y. 1999); Easa v. Florists' Transworld Deliv. Ass'n, 5 F. Supp. 2d 522, 529 (E.D. Mich. 1998). Here, we agree with the district court that Christensen failed to prove that the Committee as Plan fiduciaries failed to exercise ordinary care in selecting and retaining Watson Wyatt or in monitoring the accuracy of the heavily-used automated system. Nor is there evidence that the specific pension band error that caused Christensen's unfortunate faulty benefit estimates was a recurring problem.

### III. The Disclosure Claim

ERISA provides that pension plan administrators "shall furnish" a statement of the total plan benefits accrued to any participant "who so requests in writing." 29 U.S.C. § 1025(a)(1). An administrator who fails to comply "may in the court's discretion be personally liable" to the requesting participant for a statutory liability of

up to $100 a day. 29 U.S.C. § 1132(c)(1).[3] The district court dismissed Christensen's claim for $144,430, the maximum amount authorized. The court ruled that his telephonic requests were not "in writing," as § 1025(a) requires, and alternatively that, because of the Committee's lack of bad faith, this penalty was not warranted even if there was a technical violation of § 1025(a). We review the discretionary aspect of the court's decision not to assess a penalty for abuse of that discretion. Chesnut v. Montgomery, 307 F.3d 698, 703 (8th Cir. 2002).

On appeal, Christensen argues that his requests should be deemed "in writing" because the Summary Plan Description encouraged electronic requests while burying at the end of the document a reference to a participant's right to request in writing an annual statement of benefits accrued. We reject this contention. ERISA does not preclude plan administrators from establishing an efficient electronic method of providing as many non-binding benefit estimates as a participant may find useful, so long as the annual written request procedure mandated by § 1025(a) is also available.

Christensen further argues that the term "in writing" should be broadly construed to include an "electronic recording," as in Rule 1001(1) of the Federal Rules of Evidence. The analogy is unsound. We agree with the district court that this is a statutory penalty that may not be imposed "unless the words of the statute plainly impose it." Commissioner v. Acker, 361 U.S. 87, 91 (1959) (quotation omitted); see Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan, 24 F.3d 1491, 1505-06 (3d Cir. 1994), cert. denied, 513 U.S. 1149 (1995) (applying this principle to § 1025(a) penalties). In this case, Christensen orally requested explicitly non-binding estimates by telephone, thereby giving the Committee no reason to believe he intended to exercise his right to a statement of benefits accrued under § 1025(a). Without addressing whether a participant's use of the e-mail alternative would be a

---

[3]The Department of Labor by rule increased the maximum penalty to $110 per day. See Final Rule Relating to Adjustment of Civil Monetary Penalties, 68 Fed. Reg. 2875-76 (Jan. 22, 2003).

request "in writing," we agree with the district court that Christensen's requests were not in writing and therefore did not trigger the Committee's § 1025(a) obligations.

We further conclude that the district court did not abuse its discretion in declining to impose a penalty, even if § 1025(a) was technically violated. The Plan provided Christensen with prompt written benefit estimates in response to every request. The estimates proved to be incorrect, but the errors were not committed by the Committee, the plan administrators who would be personally liable for § 1025(a) penalties. The estimates disclosed their non-binding nature and the erroneous use of pension band 119, an error that Christensen could have detected had he reviewed the estimates more carefully. There is no evidence of bad faith on the part of anyone, which is relevant to the discretionary penalty decision. Chesnut, 307 F.3d at 704. In these circumstances, imposition of a statutory penalty would be unjust.

## IV. The Denial of Christensen's Motion To Alter or Amend

Christensen also argues that the district court erred in denying his motion to alter or amend the adverse judgment because the transcript of deposition testimony by the Plan's pension manager, received five days after the court's summary judgment order, demonstrated that the Committee knew of recurring errors in its automated system. The district court denied the motion because Christensen had ample time to take the deposition and failed to request a continuance to allow more discovery. The court also reviewed the deposition transcript and concluded that the testimony did not create a genuine issue of material fact warranting the denial of summary judgment. "A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion." Global Network Techs., Inc. v. Reg'l Airport Auth., 122 F.3d 661, 665 (8th Cir.

1997).  After careful review of the record on appeal, we agree with both rulings. There was no abuse of discretion.

The judgment of the district court is affirmed.

_____