**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHEN H. BAFFORD; LAURA
BAFFORD; EVELYN L. WILSON,
on their own behalves and on behalf of
a class of similarly situated
participants and beneficiaries,
   *Plaintiffs-Appellants*,

 v.

ADMINISTRATIVE COMMITTEE
OF THE NORTHROP GRUMMAN
PENSION PLAN,
   *Defendant-Appellee*,

 and

NORTHROP GRUMMAN
CORPORATION; ALIGHT
SOLUTIONS LLC, FKA Hewitt
Associates LLC,
   *Defendants*.

No. 22-55634

D.C. No.
2:18-cv-10219-
ODW-E

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 17, 2023
San Francisco, California

Filed May 9, 2024

Before:  Morgan Christen, Roopali H. Desai, and Anthony
D. Johnstone, Circuit Judges.[*]

Opinion by Judge Christen

**SUMMARY**[**]

**Employee Retirement Income Security Act**

The panel reversed the district court's dismissal of an action brought by pension plan participants, alleging that the plan administrator violated the Employee Retirement Income Security Act by not providing pension benefit statements automatically or on request, and by providing inaccurate pension benefit statements prior to the participants' retirements.

In an earlier appeal, the court affirmed in part and vacated in part an earlier dismissal. On remand, plaintiffs filed amended complaints. The panel held that the court's prior mandate did not preclude plaintiffs from pleading, on remand, their claim for violation of 29 U.S.C.

---

[*] Judge Desai was drawn at random to replace Judge Bea. Judge Desai has reviewed the briefs, the record, and the recording of oral argument.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1025(a)(1)(B)(i) in the plan administrator's failure to provide them with pension benefit statements every three years or with annual notices of the availability of such statements.  The panel further held that plaintiffs stated a § 1025(a)(1)(B)(i) claim.

The panel held that plaintiffs also stated a claim under § 1025(a)(1)(B)(ii), which requires administrators to furnish pension benefit statements in response to participants' written requests.  The panel concluded that plaintiffs' claim that the administrator provided substantially inaccurate pension benefit statements was cognizable under § 1025(a)(1)(B)(ii).  The panel also concluded that plaintiffs adequately pleaded an ERISA violation based on their allegation that they made written requests sufficient to trigger the duty to produce pension benefit statements.  The panel rejected the administrator's argument that there were no remedies available for the ERISA violations plaintiffs alleged.

Accordingly, the panel reversed the district court's dismissal of plaintiffs' claims under § 1025(a)(1)(B)(i)-(b)(ii) and remanded for further proceedings.

## COUNSEL

Elizabeth Hopkins (argued) and Susan L. Meter, Kantor & Kantor LLP, Northridge, California; Teresa S. Renaker and Kirsten G. Scott, Renaker Scott LLP, San Francisco, California; for Plaintiffs-Appellants.

Brett E. Legner (argued) and Nancy G. Ross, Mayer Brown LLP, Chicago, Illinois; Kristin W. Silverman, Mayer Brown LLP, Palo Alto, California; for Defendant-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Evelyn Wilson and Stephen Bafford, participants in a Northrop Grumman pension plan, allege that they requested benefit statements from the plan's administrator to plan their retirements. In response, they received statements that grossly overstated their retirement benefits. Wilson and Bafford learned of the miscalculations only after they had retired and had begun receiving their pensions. Plaintiffs initiated this action, alleging that the plan administrator violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, by not providing pension benefit statements automatically or on request, and by providing inaccurate pension benefit statements. Plaintiffs appeal the district court's dismissal of their ERISA claims.

In an earlier appeal of this case, we held that an online inquiry may qualify as a written request and trigger a plan administrator's statutory duty to provide a pension benefit statement if the inquiry comprises an "'intentional recording of words in a visual form' that conveyed a request for a pension benefit statement." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1030 (9th Cir. 2021) (quoting *Writing*, Black's Law Dictionary (11th ed. 2019)). We now hold that Plaintiffs adequately alleged facts that, if proved, triggered the duty to provide pension benefit statements, and that Plaintiffs stated a viable ERISA claim by alleging that the plan administrator provided substantially inaccurate pension benefit statements. We therefore reverse and remand.

## I.  BACKGROUND

Evelyn Wilson and Stephen Bafford began working for Northrop Grumman Corporation and participating in subplans of a pension benefit plan that Northrop provided for its employees, the Northrop Grumman Pension Plan (the Plan), in the late 1980s.[1]  Both Plaintiffs left Northrop after eleven years of employment, then joined TRW Corporation and participated in TRW's pension plan.  Northrop acquired TRW in 2002, and at that time Plaintiffs again became Northrop employees and TRW's pension plan became a Northrop pension plan.  Only the pension plan from Plaintiffs' first periods of employment with Northrop is at issue in this case.

The Plan is a defined benefit plan, meaning that participants receive fixed monthly payments after they retire.  Benefits paid under the Plan are calculated using a formula that includes the employee's length of employment and the average of the employee's highest three years of salary earned within the last ten years of Plan participation.  For employees like Plaintiffs who worked at Northrop during more than one period, the formula counts years of service from both periods but includes average salaries from only the first period of employment.

The Administrative Committee of the Northrop Plan (the Committee) is the Plan's designated administrator.  In that role, the Committee sent several documents to Plan participants, but it delegated authority to a third-party contractor to handle some administrative services, including

---

[1] Plaintiff Laura Bafford is Stephen Bafford's wife and the beneficiary of his pension under the Plan.  In the remainder of this opinion, we use "Plaintiffs" to refer to Wilson and Bafford in their capacities as Plan participants.

providing pension-related documents.  Relevant here, the Committee sent participants a Summary Plan Description (SPD) in 2014 that stated, "[y]ou can track the amount of your accrued benefit and project your estimated benefit at retirement online" at the website "*My Benefits Access*."  The SPD also laid out participants' right to "[o]btain a statement telling you . . . what your estimated benefits would be at normal retirement age if you stop working under the plan now," which "must be requested in writing."  Separately, the Committee sent Annual Funding Notices in 2014, 2015, and 2016 that told participants, "you have the right to request and receive, free of charge, a statement of your accrued pension benefits.  To request a statement of your accrued pension benefits and/or retire, log on to *My Benefits Access* available through *Benefits OnLine* or call the NGBC [Northrop Grumman Benefits Center]."

Plaintiffs began planning their retirements in 2010 and made several requests for pension statements over the next few years.  When they became Northrop employees for the second time, Plaintiffs were told by Northrop representatives that they would be able to obtain pension statements online once the company corrected an issue with the website.  Each time Plaintiffs wanted to obtain a pension statement, they logged onto the benefits website by typing their names and Social Security or employee identification numbers, then clicked through the online menu options to reach the pension section.  At that point, the website displayed a message stating that it could not provide pension benefit statements, and that in order to obtain one they would have to call a telephone number instead.  Plaintiffs allege that they called the telephone number, again gave their names and Social Security or employee identification numbers, provided anticipated employment termination and retirement dates,

and requested calculations of their pension benefits.  In response, Plaintiffs received statements by mail showing their projected monthly pension benefits.  The statements were titled "Retirement Plan Pension Estimate Calculation Statement[s]" and explained that the "amounts are estimated benefits using your personal information on file, the assumptions you entered . . . , and the current terms of the Retirement Plan."   Plaintiffs were aware that other employees could obtain pension statements from the website, so they continued to try to request statements online.  Bafford accessed the website to request statements twelve times and received twelve responses by mail, each of which informed him that he could expect to receive between $2,000 and $2,115 per month.  Wilson similarly requested and received multiple statements, each of which informed her that she could expect to receive approximately $1,630 per month.  When Plaintiffs retired—Wilson in 2014 and Bafford in 2016—they began receiving monthly payments that were consistent with these statements.

In late 2016, the Committee switched its third-party contractor and had an audit performed.  The audit revealed that the calculations of Plaintiffs' benefits had incorrectly applied the Plan's formula by incorporating Plaintiffs' salaries from their second periods of employment at Northrop, which were higher than their salaries earned during their first periods of employment.  In early 2017, the Committee notified Plaintiffs of the error and informed them that it was cutting their benefits by more than half: Bafford's monthly benefit was reduced from $2,114.41 to $807.89 and Wilson's monthly benefit went from $1,630.11 to $768.59.  The Committee also notified Wilson that she would be required to repay over $35,000 in pension benefits that she had already received.

Plaintiffs filed suit in 2018, asserting that Northrop, the Committee, and the contractor had breached their fiduciary duties; that the Committee had violated ERISA's disclosure requirements; and that the contractor had violated state law.[2] The district court granted the Committee's motion to dismiss, ruling that Plaintiffs had failed to state cognizable ERISA claims because, the court reasoned, the Defendants had not breached their fiduciary duties, Plaintiffs' online inquiries were not "written requests" for pension benefit statements within the meaning of ERISA, and ERISA preempted their state-law claims. On appeal, we affirmed dismissal of the fiduciary duty claim, reversed dismissal of the state-law claims, vacated dismissal of the ERISA disclosure claims, and remanded with instructions to allow Plaintiffs to file an amended complaint. *Bafford*, 994 F.3d at 1028, 1031–32.

On remand, Plaintiffs filed a Second Amended Complaint realleging their state-law claims and their claims against the Committee for violations of ERISA's disclosure provisions. Specifically, Plaintiffs alleged that they never received pension benefit statements or notices informing them how they could obtain such statements, and also alleged they received inaccurate statements of their retirement benefits in response to their written requests. The district court dismissed with prejudice the claim based on receipt of inaccurate pension benefit statements, this time reasoning that ERISA did not require the Committee to provide accurate pension benefit statements. The court dismissed Plaintiffs' other ERISA claims with leave to amend because they were "so intertwined" with Plaintiffs'

---

[2] Wilson and the Baffords filed separate suits in 2018 but Wilson joined the Baffords' case in 2019.

inaccuracy claim that the court had difficulty reviewing the claims separately. The court subsequently declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims.[3] When Plaintiffs filed a Third Amended Complaint that continued to allege that they had received inaccurate pension benefit statements, the court expressly ordered Plaintiffs to file an amended complaint removing those previously rejected allegations. The court ultimately struck Plaintiffs' Fourth Amended Complaint because it continued to allege that Plaintiffs received inaccurate pension benefit statements and because Plaintiffs' allegations were overbroad.

Rather than filing another amended complaint, Plaintiffs requested entry of final judgment and filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

We review de novo the district court's compliance with our mandate. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1066 (9th Cir. 2012). We also review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "and may affirm on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023) (citing *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 554 (9th Cir. 2016)). "[W]e accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th

---

[3] Plaintiffs refiled their state-law claims against the third-party contractor in state court.

Cir. 2021) (alteration in original) (quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)).

## III.  DISCUSSION

Plaintiffs' operative complaint asserted claims for failure to provide the pension benefit statements required by two ERISA provisions.  *See* 29 U.S.C. § 1025(a)(1)(B)(i)–(ii). Section 1025(a)(1)(B)(i) requires a plan administrator to provide a pension benefit statement to an employed plan participant at least once every three years.  Plan administrators can alternatively satisfy § 1025(a)(1)(B)(i) by complying with § 1025(a)(3)(A), which requires that plan administrators provide at least annual notice of the availability of pension benefit statements and notice of how participants may obtain them.  Plan administrators must comply with one of these provisions without prompting; there is no need for participants to make requests under these provisions.  Section 1025(a)(1)(B)(ii) separately requires plan administrators to provide pension benefit statements to plan participants, employed or not, upon written request. Participants are entitled to request and receive one such statement per year.  29 U.S.C. § 1025(b).  The pension benefit statements provided under either § 1025(a)(1)(B)(i) or § 1025(a)(1)(B)(ii) must reflect participants' "total benefits accrued."  29 U.S.C. § 1025(a)(2)(A)(i)(I).

Plaintiffs' complaint alleges that Plaintiffs never received triennial pension benefit statements as provided in § 1025(a)(1)(B)(i) or the annual notices described in § 1025(a)(3)(A).  The operative complaint also alleges that they received no pension benefit statements in response to their online requests, or alternatively, that the statements they did receive did not qualify as pension benefit statements because they were grossly inaccurate.

This appeal presents four issues: (1) whether Plaintiffs adequately alleged their claim under § 1025(a)(1)(B)(i) that the Committee did not send triennial pension benefit statements or annual notices of the availability of such statements; (2) whether Plaintiffs' allegation that the Committee furnished inaccurate pension benefit statements stated a cognizable cause of action under § 1025(a)(1)(B)(ii); (3) whether Plaintiffs adequately alleged that they made "written requests" for pension benefit statements; and (4) whether any remedies are available for the Committee's alleged failure to provide compliant pension benefit statements.[4]

## A.  Plaintiffs' § 1025(a)(1)(B)(i) claim

To state a claim for violating § 1025(a)(1)(B)(i), Plaintiffs were required to allege that the Committee failed to provide them with pension benefit statements every three years, 29 U.S.C. § 1025(a)(1)(B)(i), and also failed to provide annual notice that pension benefit statements were available and how to obtain them, 29 U.S.C. § 1025(a)(3)(A).  *See Bafford*, 994 F.3d at 1028–29. Plaintiffs' operative complaint alleged that the Committee did not comply with either alternative, and that the Committee's duty to provide pension benefit statements

---

[4] The Committee also argues that Plaintiffs' ERISA claims are time-barred.  The district court did not reach the statute of limitations issue because it dismissed the complaint on the merits.  "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).  The Committee concedes in its briefing that the claim based on one of Bafford's requests for pension benefit statements may be timely. Given the limited record before us, we decline to resolve in the first instance whether Plaintiffs' claims are timely.

every three years, or annual notice of how to obtain them, began in December 2002 when Plaintiffs became Northrop employees and Plan participants for the second time. Plaintiffs sought statutory penalties and equitable remedies for these alleged violations under 29 U.S.C. § 1132.

The Committee argues that our prior mandate precluded Plaintiffs from pleading their § 1025(a)(1)(B)(i) claim on remand, and that even if the scope of the mandate allowed Plaintiffs to replead this claim, the operative complaint does not state a viable cause of action.  We conclude that Plaintiffs'  § 1025(a)(1)(B)(i)  claim  survives  the Committee's Rule 12(b)(6) challenge.

### 1.  Our prior mandate did not preclude Plaintiffs from repleading their § 1025(a)(1)(B)(i) claim on remand.

The district court allowed Plaintiffs to replead their § 1025(a)(1)(B)(i) claim on remand "[i]n light of the Ninth Circuit's mandate."  The Committee argues the district court erred because our prior decision precluded Plaintiffs from repleading their claim.  We disagree.

Our  prior  opinion  reasoned  that  Plaintiffs' § 1025(a)(1)(B)(i) claim was inadequately pleaded because, although the complaint alleged that the Committee did not send triennial pension benefit statements, it did not allege that the Committee failed to comply with the alternative annual notice provision in § 1025(a)(3)(A).  *Bafford*, 994 F.3d at 1029.  We did not hold that this inadequacy was impossible to cure.  Instead, we "direct[ed] the district court to permit Plaintiffs to file an amended complaint."  *Id.* at 1032.  "Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to file additional pleadings."  *S.F. Herring Ass'n v. Dep't of*

*the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (quoting *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986)).  Because our order did not express "clear intent to deny amendment seeking to raise new issues not decided by the . . . appeal," *id.*, the district court did not err by allowing Plaintiffs to replead their § 1025(a)(1)(B)(i) claim.

### 2. Plaintiffs adequately alleged their § 1025(a)(1)(B)(i) claim.

Next, the Committee argues that Plaintiffs "plead[ed] themselves out of court" on their § 1025(a)(1)(B)(i) claim because their complaint quoted from a Summary Plan Description and three Annual Funding Notices were attached to their complaint.  The Committee contends that these documents show that it provided annual notice of the availability of pension benefit statements required by the alternate provision, § 1025(a)(3)(A).  Plaintiffs counter that the SPD and Annual Funding Notices are required by other ERISA provisions and cannot also satisfy § 1025(a)(3)(A).  We consider these documents because they were incorporated into the complaint and the complaint "refers extensively to the document[s] or the document[s] form[] the basis of the plaintiff's claim." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162–63 (9th Cir. 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Plaintiffs cite no authority barring documents from fulfilling multiple ERISA requirements simultaneously and we do not know of any.  Thus, we consider whether either document vitiates Plaintiffs' claim.

Both the SPD and the Annual Funding Notices appear to comply with § 1025(a)(3)(A).  The SPD informed Plan participants that they had the right to "[o]btain a statement telling you . . . what your estimated benefits would be at

normal retirement age if you stop working under the plan now," and that the "statement must be requested in writing." The SPD also informed participants they could "track the amount of your accrued benefit . . . online at *My Benefits Access*, available at *Benefits OnLine*."  That disclosure complied with § 1025(a)(3)(A) because it gave "notice of the availability of the pension benefit statement" and, in conjunction with the contact information on the last page of the document, it conveyed "the ways in which the participant may obtain such statement."  29 U.S.C.  § 1025(a)(3)(A). The Annual Funding Notices similarly informed Plan participants that "you have the right to request and receive, free of charge, a statement of your accrued pension benefits. To request a statement of your accrued pension benefits . . . log on to *MyBenefits Access* available through *Benefits OnLine* or call the NGBC."

The complaint alleges that Plaintiffs were unable to obtain pension benefit statements through the website because when they attempted to follow the instructions in the SPD and Annual Funding Notice, the website displayed messages stating that it was unable to provide pension benefit statements and directing Plaintiffs to call a telephone number instead.  Plaintiffs argue that the Committee breached its duty to tell them how to access pension benefit statements because the website did not actually allow them to obtain such statements.  To the extent the SPD and Annual Funding Notice pointed participants to the website to request pension benefit statements and Plaintiffs prove that the website failed to function as promised, the documents incorporated into the complaint do not satisfy the Committee's duty under § 1025(a)(3)(A).  However, the documents also notified participants that they could request statements by mail and telephone; Plaintiffs received

statements in response to the inquiries they made, and they do not allege it was impossible to request and receive statements by mail.

Nevertheless, the Committee's argument that Plaintiffs defeated their own claim by incorporating these documents in their complaint, thereby conceding that they received these notices, ultimately fails because this record does not establish that Plaintiffs received an SPD or Annual Funding Notice at least once each year that they were employed at Northrop and participating in the Plan. *See* 29 U.S.C. § 1025(a)(3)(A). The record before us shows only that the Committee provided an SPD in 2014 and Annual Funding Notices in 2014, 2015, and 2016; Plaintiffs each worked for Northrop for over a decade after they returned to the company in 2002. At this stage of the litigation, we cannot conclude that the Committee satisfied § 1025(a)(3)(A).

## B. Plaintiffs' § 1025(a)(1)(B)(ii) claim

Separate from the provisions that require plan administrators to provide automatic statements or notices, § 1025(a)(1)(B)(ii) requires administrators to furnish pension benefit statements in response to participants' written requests. We previously remanded this case to allow Plaintiffs to allege facts supporting their implied allegation that their online inquiries qualified as written requests for pension benefit statements, and Plaintiffs amended their complaint on remand. The district court ruled it was plausible that Plaintiffs' online communications to the Committee qualified as written requests, but the court also ruled that providing inaccurate pension benefit statements does not violate ERISA's disclosure requirements. The district court dismissed Plaintiffs' § 1025(a)(1)(B)(ii) claim on this basis.

On appeal, the Committee provides multiple alternative reasons to affirm the district court's dismissal of Plaintiffs' § 1025(a)(1)(B)(ii) claim: Plaintiffs did not make written requests, the documents they requested were not pension benefit statements, and Plaintiffs are not eligible for any of the remedies they seek.  We first conclude that Plaintiffs' claim that the Committee provided substantially inaccurate pension benefit statements is cognizable.  We then conclude that Plaintiffs adequately pleaded an ERISA violation based on their allegation that they made written requests sufficient to trigger the duty to produce pension benefit statements, and that we cannot determine on this record what type of documents Plaintiffs requested.  Finally, we consider and reject the Committee's argument that there are no remedies available for the ERISA violations Plaintiffs allege.

### 1. Plaintiffs state a viable claim that they received inaccurate pension benefit statements.

The parties do not cite, and we are unaware of, any circuit or Supreme Court authority addressing whether a claim under § 1025(a)(1)(B)(ii) may be premised on the allegation that a plan administrator provided an inaccurate pension benefit statement.  The district court reasoned that ERISA contains no "plain language suggesting that an inaccuracy in a statement constitutes an ERISA violation." We respectfully disagree.

"We begin, as always, with the language of the statute," *Duncan v. Walker*, 533 U.S. 167, 172 (2001), and read § 1025(a)(1)(B)(ii) along with § 1025(a)(2)(A).  The latter provision explains that the pension benefit statements that plan administrators must provide are required to notify participants of their "total benefits accrued" and the

"nonforfeitable pension benefits, if any, which have accrued," "in a manner calculated to be understood by the average plan participant."   29 U.S.C. § 1025(a)(2)(A). Section 1025 does not define "total benefits accrued," but ERISA elsewhere defines the similar term "accrued benefit" as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age."   29 U.S.C. § 1002(23)(A).

We can import that definition of "accrued benefit" into § 1025 only if we can discern that "accrued benefit" and "total benefits accrued" share the same meaning.  Section § 1025(a) uses those two terms in consecutive clauses: § 1025(a)(2)(A)(i) refers to "total benefits accrued," while § 1025(a)(2)(A)(ii) refers to "any accrued benefits described in clause (i)."  Those two clauses use "accrued benefit" and "total benefits accrued" to mean the same thing because clause (ii) explicitly refers back to clause (i).  *See HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2177 (2021) (considering "variation[s] of the very term in dispute" in neighboring subparagraphs to resolve a term's meaning).  We therefore conclude that "total benefits accrued" under § 1025(a)(2)(A) has the same meaning as "accrued benefit" in § 1002(23)(A).

In *Andersen v. DHL Retirement Pension Plan*, we interpreted "accrued benefit" in § 1002(23)(A) as it related to another ERISA provision and explained that we "look to the [plan] document itself to determine what 'accrued benefit' means in the context of that plan."  766 F.3d 1205, 1213 (9th Cir. 2014).  Here, we look to the plan document to determine whether a benefit amount complies with § 1025(a)(1)(B)(ii).  It is plain that if a benefit amount disclosed in a pension benefit statement is substantially

miscalculated according to the plan's formula, then that statement of the benefit amount is not "determined under the plan" as required by § 1002(23)(A) and does not reflect the participant's "total benefits accrued" as required by § 1025(a)(2)(A)(i).  It follows that a pension benefit statement reporting a substantially inaccurate benefit amount does not comply with § 1025(a)(1)(B)(ii).

Our interpretation is also consistent with ERISA's goals. Although ERISA does not require employers to provide any retirement benefits, a central "policy of [ERISA] [is] to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information."  29 U.S.C. § 1001(b).[5]  The Supreme Court has explained that "Congress' purpose in enacting the ERISA disclosure provisions [was] ensuring that 'the individual participant knows exactly where he stands with respect to the plan.'"  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93–533, p. 11 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649). This core purpose of ERISA would be entirely frustrated if plan administrators could satisfy their disclosure duties by providing grossly inaccurate pension benefit statements.

Plaintiffs adequately alleged that the Committee violated § 1025(a)(1)(B)(ii) because they alleged that the Committee provided them with pension benefit statements that did not calculate their retirement benefits according to the Plan's

---

[5] *See also* 29 U.S.C. § 1001(a) (memorializing Congressional finding that "it is desirable in the interests of employees and their beneficiaries . . . that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [pension] plans.").

formula, and grossly overstated their benefits.  *See Bafford*, 994 F.3d at 1024 (deeming pension benefits provided in this case "grossly overestimated").[6]

### 2. Plaintiffs adequately alleged that they made written requests for pension benefit statements.

The Committee alternatively argues that, even if it is possible to state a § 1025(a)(1)(B)(ii) claim premised on the provision of inaccurate pension benefit statements, we should affirm the district court's order dismissing Plaintiffs' claim because Plaintiffs did not allege that they made written requests for pension benefit statements.  We conclude that Plaintiffs adequately pleaded their § 1025(a)(1)(B)(ii) claim.

### a. Plaintiffs alleged that they made written requests.

ERISA requires the administrator of a defined benefit plan to provide a "pension benefit statement" to plan participants "upon written request."  29 U.S.C. § 1025(a)(1)(B)(ii).  The district court initially dismissed Plaintiffs' § 1025(a)(1)(B)(ii) claim because Plaintiffs' electronic requests did not qualify as written requests that triggered the Committee's obligation to provide pension benefit statements.  When this case was previously before us, we vacated the district court's ruling and held that § 1025(a)(1)(B)(ii) does not limit written requests to handwritten or printed requests and that "an adequate electronic writing suffices" if it comprises an "'intentional

---

[6] Plaintiffs contend that the pension benefit figure provided to plan participants must be precise.  To resolve this appeal, we need not decide the margin by which a benefit calculation must miss the mark in order to state a colorable claim under § 1025(a)(1)(B)(ii).

recording of words in a visual form' that convey[s] a request for a pension benefit statement." *Bafford*, 994 F.3d at 1029–30 (quoting *Writing*, Black's Law Dictionary (11th ed. 2019)).

On remand, Plaintiffs amended their complaint to allege that when they sought to obtain pension benefit statements after returning to Northrop, Plaintiffs "made a written request by first logging on to the Northrop benefits website" as directed by the SPD, typing in their names and Social Security numbers or employee identification numbers, then clicking through menu options to reach the website's pension section. From there, they followed the directions to complete their requests by telephone.

The Committee's argument that Plaintiffs did not make written requests because they "conveyed their requests via the telephone" is not well taken. The complaint alleges that Plaintiffs requested pension benefit statements in writing. More specifically, Plaintiffs allege that the SPD and Annual Funding Notices directed them to the website, and that they typed in their information and clicked or navigated through the portion of the site devoted to pensions. Plaintiffs allege they were directed to call to complete their requests and that some of the information they typed into the site was repeated in those calls, but we cannot tell how much of the information was entered by typing or clicking through the site and how much was conveyed or repeated via telephone. Whatever user inputs preceded Plaintiffs' telephone calls, it was apparently sufficient for the website to recognize that Plaintiffs were requesting some sort of pension statements, because the website displayed a notice that it was unable to provide such statements and directed Plaintiffs to call to complete the process. The responses Plaintiffs received stated that the figures were based on Plaintiffs' "personal

information on file [and] the assumptions [Plaintiffs] entered." The Committee's contention, that this record shows only that Plaintiffs orally requested pension benefit statements, is not supported.[7]

On this record, we agree with the district court's ruling on remand that the complaint sufficiently alleged that Plaintiffs' online inquiries qualified as written requests for purposes of ERISA.

### b. Plaintiffs alleged that they requested pension benefit statements.

The Committee's central argument is that Plaintiffs' requests did not trigger its statutory duty to provide pension benefit statements under § 1025(a)(1)(B)(ii) because Plaintiffs requested something other than pension benefit statements. Indeed, the Committee argued before our court that it did not send any pension benefit statements in response to Plaintiffs' requests because, in the Committee's view, Plaintiffs never requested this type of document.

The Committee argues that it offers multiple retirement-related services to Plan participants, not all of which are required by ERISA. The Committee points to a distinction in the SPD between two types of pension information participants could request: on one page, the SPD informed participants of their right to obtain "a statement telling you . . . what your estimated benefits would be at normal retirement age if you stop working under the plan now" and, on another page, the SPD told participants they could

---

[7] As for the Committee's related argument that Plaintiffs were required to mail their written requests to the address listed at the end of the SPD, the SPD provided two ways to request pension benefit statements, one of which was to access the Plan's website.

"project your estimated benefit at retirement."  The Committee contends that the first option refers to a request for a pension benefit statement as defined by ERISA, while the second option refers to "an additional, gratuitous service provided to help [participants] manage their benefits."  In the Committee's view, Plaintiffs requested "estimate[s] of their future benefits" or "projection[s] of future benefits" that were premised "on the assumption that they would work for [Northrop] for an additional period of time," and never requested "pension benefit statements" based only on already-accrued benefits without incorporating assumptions about future accruals.

A pension benefit statement must indicate the "total benefits accrued" by the participant, 29 U.S.C. § 1025(a)(2)(A), "expressed in the form of an annual benefit commencing at normal retirement age," 29 U.S.C. § 1002(23)(A).  Based on the past tense in "total benefits accrued," we agree with the Committee that ERISA requires a plan administrator to provide a statement that conveys the benefits a participant has already accrued at the time of their request, rather than benefits they may accrue in the future. That said, the Committee's argument presents a factual dispute inappropriate for resolution on a motion to dismiss because it requires making factual findings concerning the type of documents Plaintiffs requested, which is not possible on the present record.

The sample SPD in the record gave the same instructions for how to request both types of information: it directed participants to "track the amount of your accrued benefit *and* project your estimated benefit at retirement online" by accessing the Plan's website.  More problematically for the Committee, it concedes in its briefing that the Annual Funding Notices "explain[ed] how participants may obtain a

pension benefit statement," and the Annual Funding Notices incorporated into Plaintiffs' complaint represented to participants that they could "request a statement of your accrued pension benefits" by "log[ging] on to *My Benefits Access* available through *Benefits OnLine* or call[ing] the NGBC."  Plaintiffs allege that they followed these directions.  Moreover, the website apparently interpreted Plaintiffs' online inputs as conveying requests for some sort of pension statements, because it responded by displaying messages that it could not provide pension benefit statements and that Plaintiffs would need to call instead.  The SPD's reference to another type of pension-related inquiry does not shed light on the statements Plaintiffs requested on the website or telephone.[8]

The Committee makes several additional assertions about what Plaintiffs requested, but these assertions are premised on a sample of the documents Plaintiffs received in response to their requests, not what they requested.  For example, the Committee insists that Plaintiffs got what they asked for—something other than a pension benefit statement—because the responses Plaintiffs received and attached to their complaint were each titled "Retirement Plan Pension Estimate Calculation Statement," not "Pension

---

[8] The Committee separately argues that Plaintiffs did not request pension benefit statements by logging into the website because doing so enabled other actions besides requesting pension benefit statements, including reviewing prior statements and obtaining information about employee health benefits.  This argument overlooks that Plaintiffs alleged that they navigated through the website to reach the point where they could, and did, request pension benefit statements.  To the extent the Committee's argument is that an administrator can avoid the duties imposed by § 1025(a)(1)(B)(ii) by directing participants to click, rather than type, their requests, we reject their contention.  *See Bafford*, 994 F.3d at 1030.

Benefit Statement," and because the statements informed them, "Here's the pension estimate[s] you requested."  The Committee's argument incorrectly presumes that we can establish at the Rule 12(b)(6) stage what Plaintiffs requested by examining the documents they received.

We cannot be certain what type of statements Plaintiffs requested because we do not have screenshots showing what Plaintiffs saw on the benefits website and we lack details of what Plaintiffs communicated by telephone.  The Committee argues that pension benefit statements would have shown the amounts of Plaintiffs' accrued benefits, i.e., the amounts they could expect to receive if they stopped working on the day the requests were made.  From there, the Committee suggests that the statements Plaintiffs requested necessarily differed because Plaintiffs input hypothetical future termination and retirement dates.  This argument fails because we do not know exactly how the Plan's formula works and whether Plaintiffs would have accrued additional benefits after the dates of their requests and before their respective employment termination dates.  It is uncontested that the formula should have incorporated an average of Plaintiffs' highest three years of salary from their first period of employment only, but the Committee has not addressed the details of how the second period of employment factors into the formula.  On this record, we are persuaded that Plaintiffs have adequately pleaded that they requested pension benefit statements by following the Committee's directions for accessing the Plan's website.

Plaintiffs also alleged a second theory of liability under § 1025(a)(1)(B)(ii), that when they made written requests for pension benefit statements on the website, the website informed them that it could not provide pension benefit statements and directed them to call instead.  As we have

explained, if Plaintiffs prove that the website did not allow them to request and receive pension benefit statements, and also establish that their user inputs to the site were sufficient to qualify as written requests for pension benefit statements, the Committee cannot rely on the website to satisfy its statutory obligation under § 1025(a)(1)(B)(ii).  The Committee has not met its burden to show that dismissal of Plaintiffs' alternate theory is warranted.

### 3.  Remedies

Plan participants can enforce ERISA's disclosure requirements through several provisions in ERISA § 502, 29 U.S.C. § 1132.  Here, Plaintiffs' operative complaint sought statutory penalties under § 1132(c)(1) and equitable relief under § 1132(a)(3).  The Committee argues that we should affirm the district court's order dismissing Plaintiffs' complaint because there is no relief available for any of the violations Plaintiffs alleged.  We disagree.

### a.  Statutory penalty

Section 1132(c)(1) provides that an administrator "who fails to meet the requirements of . . . section 1025(a) of this title," or "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant," may in the court's discretion be liable for a penalty of up to $100 a day.[9]

The district court did not definitively rule on this issue but opined that it was "unlikely" that § 1132(c)(1)'s penalty provision applied to administrators who provide inaccurate pension benefit statements.  The court viewed the penalty

---

[9] The maximum daily penalty is now $110.  *See* 29 C.F.R. § 2575.502c-1.

provision as supporting its conclusion that ERISA does not afford a cause of action for the provision of inaccurate pension benefit statements because penalties under § 1132(c)(1) are assessed on a daily basis and therefore increase "in proportion to the amount of time that has passed since the participant made the request."  In contrast, the district court reasoned, the harm from an inaccurate statement "is in no way tied to the number of days that have passed."  The Committee repeats this rationale on appeal and urges that it presents another alternative basis for affirming the order dismissing Plaintiffs' § 1025(a)(1)(B)(ii) claim.  We conclude that the statute is not so limited.  The plain text of § 1132(c)(1) broadly permits the imposition of penalties for "fail[ing] to meet the requirements" of "section 1025(a)." 29 U.S.C. § 1132(c)(1).  Because we hold that a claim under § 1025(a)(1)(B)(ii) for providing grossly inaccurate pension benefit statements is cognizable, a colorable claim of that type of violation falls within the scope of ERISA's penalty provision.

At least for a participant who does not otherwise receive information that reveals that a mistake has been made in their pension benefit calculation, the purpose of § 1132(c)(1)'s daily penalty may apply with even more force for inaccurate, rather than missing, pension benefit statements.  Unlike a participant who does not receive any pension benefit statement and therefore does not know their retirement benefit, a participant who receives a significantly inaccurate statement may be affirmatively misled into believing that their pension will be greater than it is and make inadvisable decisions as a result.  Here, Plaintiffs alleged that they chose to retire when they did because the Committee's grossly inaccurate statements led them to believe that they were financially secure enough to do so.

The Committee separately argues that lack of bad faith precludes a court from awarding statutory penalties under § 1132(c)(1).  To support this claim, the Committee relies on an Eighth Circuit case, *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2006).  *Christensen* does not support the Committee's contention.  There, the Eighth Circuit concluded that the district court's decision not to award a penalty was not an abuse of discretion.  The Eighth Circuit reasoned that a penalty for the provision of an inaccurate pension benefit statement would be unjust because there was no indication of bad faith by the administrator, and because the plaintiff in that case could have detected the error by carefully reading the benefit statement he received.  *See* 462 F.3d at 919.  *Christensen* accordingly held that the absence of bad faith is a factor "relevant to the discretionary penalty decision"; it did not hold that the absence of bad faith precludes the application of § 1132(c)(1)'s penalty provision. *Id.*; *see also Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993) (holding that an administrator's bad faith is relevant under section 1132(c), but the absence of bad faith does not excuse the failure to provide a timely statement of benefits).  Notably, the Committee does not argue that Plaintiffs could have determined from the information they received that the statements erroneously calculated their benefits.  The plain text of the penalty provision does not require a plan administrator to act in bad faith to be liable for a penalty, and our circuit has never required a finding of bad faith before applying § 1132(c)(1).  We decline to read that requirement into the statute.

### b.  Equitable remedies

Finally, the Committee argues that Plaintiffs are not entitled to the equitable remedies they prayed for in their operative complaint.  Section 1132(a)(3) allows plan

participants to seek "appropriate equitable relief" for ERISA violations.  Plaintiffs' complaint sought three equitable remedies:  equitable estoppel, plan reformation, and surcharge.  The district court did not reach equitable remedies and the questions raised on appeal were not fully briefed before the district court.  "As a general rule, 'a federal appellate court does not consider an issue not passed upon below.'"  *Golden Gate Hotel Ass'n v. City & Cnty. of San Francisco*, 18 F.3d 1482, 1487 (9th Cir. 1994) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).  Thus, we decline to reach in the first instance the Committee's argument that no equitable remedies are available for the violations alleged in Plaintiffs' complaint.

## IV.  CONCLUSION

Because Plaintiffs stated cognizable claims under 29 U.S.C. § 1025(a)(1)(B)(i)–(B)(ii), we reverse the district court's dismissal of those claims and remand for further proceedings consistent with this opinion.  Each party shall bear its own costs.

**REVERSED AND REMANDED.**